RIVERA RODRÍGUEZ AND COMPANY, demandante y recurrida, *v.* WILLIAM ABRAM LEE STOWELL TAYLOR, su esposa LOURDES MARÍA ALONSO, ETC., demandados y peticionarios.

*Número:* CE-92-94          *Resuelto:* 30 de junio de 1993

882

*Luis Barceló Gener*, abogado de los peticionarios; *Luis E. Gervitz Carbonell*, abogado de la recurrida; *Reina Colón de Rodríguez, Subprocuradora General* y *Procuradora General Interina*, y *Laura Ydrach Vivoni, Procuradora General*

*Auxiliar*, abogadas del Estado Libre Asociado de Puerto Rico.

EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ emitió la opinión del Tribunal.

El presente recurso permite expresarnos sobre la validez constitucional de la Regla 56.4 de Procedimiento Civil, 32 L.P.R.A. Ap. III, la cual versa sobre las órdenes de embargo o prohibición de enajenar. La parte demandada peticionaria acude ante nos aduciendo que la misma no satisface las exigencias del debido proceso de ley ya que dicha disposición reglamentaria permite que un tribunal ordene, en forma *ex parte*, un embargo sin necesidad de vista previa y únicamente sujeto el mismo a la prestación de fianza. En apoyo de su planteamiento, la parte demandada peticionaria cita la decisión emitida por el Tribunal Supremo de Estados Unidos en *Connecticut v. Doehr*, 501 U.S. 1 (1991).

## I

La firma de contadores públicos Rivera Rodríguez & Co. presentó, ante el Tribunal Superior de Puerto Rico, Sala de Humacao, una demanda en cobro de dinero contra el peticionario William Stowell Taylor, su esposa Lourdes Alonso Barceló y la sociedad legal de bienes gananciales compuesta por ambos. Acumuló, adicionalmente, en calidad de codemandados a varias corporaciones y sociedades especiales de las cuales los Stowell son accionistas y oficiales. Reclamó de los demandados la suma de ciento veintiocho mil setecientos sesenta y tres dólares con siete centavos ($128,763.07) por concepto de servicios profesionales prestados por la firma demandante. Los demandados, por su parte, contestaron la demanda y negaron adeudar la cantidad reclamada.

Trabada así la controversia, la parte demandante solicitó del tribunal de instancia que ordenara el embargo de

varias propiedades de los demandados, en aseguramiento de la sentencia que recayera en su día. Conforme a lo solicitado, el *3 de mayo de 1991*, el referido foro emitió una orden *ex parte* mediante la cual ordenó el embargo sobre cuentas bancarias, bienes muebles, cuentas por cobrar, mercancía, certificados de ahorro, equipo de oficina, *así como bienes inmuebles propiedad de los demandados*. Emitió, en adición, un mandamiento dirigido al inquilino de dos (2) propiedades de los demandados para que consignara en el Tribunal Superior el pago mensual del arrendamiento. Más tarde, *por Orden de 24 de junio de 1991*, el tribunal expidió un mandamiento dirigido al Registrador de la Propiedad para que hiciera una anotación preventiva de demanda sobre dos (2) propiedades inmuebles pertenecientes a los demandados localizados en el complejo turístico Palmas del Mar en Humacao. Dichos mandamientos de embargo fueron expedidos *sin* vista previa, habiendo la parte demandante prestado una fianza de ciento ochenta mil dólares ($180,000) para responder por cualquier daño ocasionado por dicho embargo.

Los demandados presentaron una moción para que se celebrara una vista y se dejara sin efecto el embargo sobre la propiedad inmueble debido a que, alegadamente, el mismo le había causado graves daños. El 4 de octubre de 1991 el tribunal de instancia citó a las partes a una vista; en esa fecha el demandante desistió de la anotación preventiva sobre los dos (2) bienes inmuebles. En consecuencia, el tribunal dejó sin efecto la Orden de 24 de junio de 1991 mediante la cual se había ordenado el embargo de la propiedad inmueble ubicada en el complejo turístico conocido como Palmas del Mar.

Ello no obstante, los demandados solicitaron del tribunal de instancia que dejara sin efecto la orden de embargo contra el resto de sus bienes. Alegaron que los embargos realizados por la parte demandante, *como consecuencia de la orden emitida el 3 de mayo de 1991*, no eran válidos a

tenor con lo resuelto por el Tribunal Supremo de Estados Unidos en *Connecticut v. Doehr*, ante; decisión que estableció que, como parte del debido proceso de ley, era necesaria la celebración de una vista antes de que el tribunal del estado de Connecticut ordenara un embargo de bienes en aseguramiento de sentencia.

El tribunal de instancia descartó el argumento de la parte peticionaria y resolvió, *mediante orden de fecha 17 de enero de 1992*, que "habiendo la parte demandante prestado una fianza por la suma de $180,000.00, p[o]drá realizar otros embargos hasta el monto de la suma reclamada en la Demanda, conforme a la orden dictada por este Tribunal el día 3 de mayo de 1991". Petición de *certiorari* e interdicto en auxilio de jurisdicción, Apéndice I, pág. 3. Sostuvo así la procedencia de los referidos embargos *sin* la celebración de una vista previa.

Inconforme, los Stowell acudieron ante nos vía recurso de *certiorari*. En el mismo, le imputan al foro de instancia haber errado al:

(1) no decretar la ilegalidad del embargo trabado sobre los bienes de los codemandados Stowell y al autorizar la continuación de los mismos, en violación a lo resuelto en *Connecticut v. Doehr*, ante;

(2) no decretar la ilegalidad de los embargos trabados sobre los bienes de los codemandados, sin tener en cuenta la reclamación de éstos en el sentido de que la parte demandante no ha hecho determinación alguna respecto a las cuantías por separado de sus alegadas acreencias respectivas contra cada uno de los codemandados en este pleito, presumiendo la solidaridad de la deuda total alegada contra todos los deudores, y

(3) no decretar la ilegalidad del embargo sobre cánones de arrendamiento futuros y aún no devengados sobre las dos propiedades ubicadas en Palmas del Mar.

Mediante Resolución de 13 de marzo de 1992 acordamos revisar y expedimos el auto. En vista de que se planteaba

la inconstitucionalidad de la Regla 56.4 de Procedimiento Civil, ante, ordenamos la comparecencia de la Oficina del Procurador General para que expresara lo que a bien tuviere; ello a tenor con lo dispuesto por la Regla 21.3 de Procedimiento Civil, 32 L.P.R.A. Ap. III. Así lo hizo dicho funcionario. Estando en posición de resolver, procedemos a así hacerlo.

## II

■ El Art. II, Sec. 7 de la Constitución del Estado Libre Asociado, L.P.R.A., Tomo 1, al igual que las Emdas. V y XIV de la Constitución de Estados Unidos, L.P.R.A., Tomo 1, garantizan que:

> Ninguna persona será privada de su libertad o propiedad sin debido proceso de ley ....[1]

■ El debido proceso de ley se manifiesta en *dos* dimensiones distintas: sustantiva y procesal. Bajo el debido proceso *sustantivo*, los tribunales examinan la validez de una ley, a la luz de los preceptos constitucionales pertinentes, con el propósito de proteger los derechos fundamentales de las personas. Bajo este análisis, el Estado, al aprobar leyes o al realizar alguna actuación, no puede afectar de manera irrazonable, arbitraria o caprichosa los intereses de propiedad o libertad. *Rodríguez Rodríguez v. E.L.A.*, 130 D.P.R. 562 (1992); *Rivera Santiago v. Srio. de Hacienda*, 119 D.P.R. 265, 273 (1987). Por otro lado, en el debido proceso de ley *procesal*, se le impone al Estado la obligación de garantizar que la interferencia con los intereses de libertad y propiedad del individuo se haga a tra-

---

[1] Como se indicó en *Rivera Santiago v. Srio. de Hacienda*, 119 D.P.R. 265, 273 esc. 2 (1987):

"El lenguaje de ambas disposiciones es idéntico [refiriéndose a las constituciones de Puerto Rico y Estados Unidos], excepto que aquí se eliminó la palabra "vida", como consecuencia de haberse proscrito la pena de muerte. 2 y 3 Diario de Sesiones de la Convención Constituyente, 1501–1509 y 1626–1628 (1952)."

vés de un procedimiento que sea justo y equitativo. *López Vives v. Policía de P.R.*, 118 D.P.R. 219 (1987).

Para que entre en vigor la protección que ofrece este derecho, en su vertiente procesal, tiene que estar en juego un interés individual de libertad o propiedad. *Board of Regents v. Roth*, 408 U.S. 564 (1972); *Rivera Santiago v. Srio. de Hacienda*, ante, pág. 274. Una vez cumplida esta exigencia, hay que determinar cuál es el procedimiento exigido (*what process is due*). *Rivera Santiago v. Srio. de Hacienda*, ante, pág. 274; *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). Dependiendo de las circunstancias, diversas situaciones pueden requerir diferentes tipos de procedimientos, *pero siempre persiste el requisito general de que el proceso gubernamental debe ser justo e imparcial*. Véanse: *Rivera Santiago v. Srio. de Hacienda*, ante, pág. 274; *2 Treatise o Constitutional Law: Substance and Procedure* Sec. 17.8, pág. 259 (1986).([2])

En *Mathews v. Eldridge*, 424 U.S. 319 (1976), el Tribunal Supremo de Estados Unidos estableció los *tres (3) criterios* que deben sopesarse al determinar cuál es el proceso debido para privarle a un individuo de algún derecho protegido. Estos son: (1) se debe determinar cuáles son los intereses individuales afectados por la acción oficial; (2) el riesgo de una determinación errónea que prive a la persona del interés protegido mediante el proceso utilizado y el valor probable de garantías adicionales o distintas, y (3) el interés gubernamental protegido con la acción sumaria y la posibilidad de usar métodos alternos. Véase *Vélez Ramírez v. Romero Barceló*, 112 D.P.R. 716 (1982). A la luz de los

---

([2]) La jurisprudencia ha desarrollado dos (2) análisis para examinar la constitucionalidad de una ley o actuación según el debido proceso de ley procesal. El primero se conoce como el análisis intrínseco, el cual examina los requisitos inherentes al debido proceso, como el derecho a ser oído y a tener una vista adversativa ante un magistrado imparcial. El otro análisis se conoce como el instrumental el cual protege a los individuos de cualquier privación equivocada o sustancialmente injusta de algún derecho de propiedad o libertad. *Marshall v. Jerrico, Inc.*, 466 U.S. 238 (1980); L.H. Tribe, *American Constitutional Law*, 2da ed., Nueva York, Ed. Foundation Press, 1988, págs. 663–668.

criterios de *Mathews v. Eldridge*, ante, la jurisprudencia ha establecido *diversos requisitos que debe cumplir todo procedimiento adversativo para satisfacer las exigencias del debido proceso, a saber*: (1) notificación adecuada del proceso; (2) proceso ante un juez imparcial; (3) oportunidad de ser oído; (5) derecho a contrainterrogar testigos y examinar evidencia presentada en su contra; (6) tener asistencia de abogado, y (7) que la decisión se base en el récord. *Treatise on Constitutional Law*, ante, pág. 250. No obstante, aun cuando "[e]l debido proceso [de ley] no es abstracción apocalíptica que de sólo invocarla infunda temor de Dios al tribunal y paralice al adversario", *Domínguez Talavera v. Tribunal Superior*, 102 D.P.R. 423, 428 (1974); *Pueblo v. Pérez Santaliz*, 105 D.P.R. 10, 23 (1976); *Pueblo v. Andreu González*, 105 D.P.R. 315, 320 (1976), *el mismo "es resguardo infranqueable contra privaciones arbitrarias de la propiedad"*. (Énfasis suplido.) J.A. Cuevas Segarra, *Práctica Procesal Puertorriqueña: Procedimiento Civil*, San Juan, Pubs. J.T.S., 1989, págs. 337–338.

■ *Como principio fundamental del debido proceso se ha consagrado el derecho de toda persona a ser oído antes de ser despojado de algún interés protegido*; esta oportunidad de ser oído debe ser en: *a meaningful time and a meaningful manner. Mathews v. Eldridge*, ante, pág. 333; *Anti–Fascist Committee v. McGrath*, 341 U.S. 123 (1951). Véase H.J. Friendly, *Some Kind of Hearing*, 123 U. Pa. L. Rev. 1267 (1975). La privación de la libertad o propiedad *sin notificación u oportunidad de ser oído* se ha considerado siempre ajeno al debido proceso y en ocasiones es fuente de responsabilidad civil. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982); *Mullane v. Central Hanover Tr. Co.*, 339 U.S. 306 (1950). Un estatuto puede prevalecer sólo si contiene garantías procesales suficientes que permitan que la parte afectada puede ser oída antes de que se adjudique definitivamente el derecho involucrado, *Mitchell v. W.T. Grant Co.*, 416 U.S. 600 (1974), excepción hecha en

aquellas situaciones en que existen circunstancias extraordinarias que justifiquen lo contrario. *Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663 (1974). A esos efectos, el profesor Tribe, *op. cit.*, pág. 673, nos dice:

> *A prior hearing* had been required by the traditional conception of procedural due process under the precept that one should be able to continue living in quiet enjoyment of liberty or property unless and until there has been a fair determination that the state is entitled to intrude upon that situation of repose. (Énfasis suplido y en el original.)[3]

## III

Consistentemente hemos resuelto que los requisitos constitucionales del debido proceso de ley son aplicables a los procedimientos de embargo y prohibición de enajenar. *Domínguez Talavera v. Tribunal Superior*, ante; *Fuentes v. Shevin*, 407 U.S. 67 (1972).[4] Cuando un acreedor usa los mecanismos provistos por el Gobierno para tomar posesión de una propiedad de su alegado deudor, este último es privado de un interés constitucional significativo de propiedad. Al Estado establecer procedimientos de embargo para que una persona los use, establece un *state action* sustancial que justifica la aplicación de la cláusula del debido proceso. *Connecticut v. Doehr*, ante, pág. 13. Las exigencias del debido proceso aplican a los embargos, independientemente de que la incautación sea temporera. *Fuentes v. Shevin*, ante, pág. 86; *North Georgia Finishing, Inc. v. Di-Chem, Inc.*, 419 U.S. 601 (1975).[5]

---

[3] Es de observar que, en algunas instancias *extraordinarias*, se ha reconocido la validez de algunos procedimientos en los que la oportunidad de ser oído *se concede luego* de ocurrir la privación del derecho propietario. Esta no es la corriente predominante. *Barry v. Barchi*, 443 U.S. 55 (1979); *Hewitt v. Helms*, 459 U.S. 460 (1983).

[4] El Tribunal Supremo de Estados Unidos ha expresado que los procedimientos aprobados por los estados para embargar bienes en aseguramiento de sentencia están sujetos a los rigores del debido proceso de ley. *Peralta v. Heights Medical Center, Inc.*, 485 U.S. 80 (1988); *Connecticut v. Doehr*, 501 U.S. 1, 14 (1991).

[5] En *Fuentes v. Shevin*, 407 U.S. 67, 86 (1972), el Tribunal expresó:

Desde *Sniadach v. Family Finance Corp.*, 395 U.S. 337 (1969), el Tribunal Supremo de Estados Unidos reconoció que una notificación adecuada y una oportunidad efectiva de ser oído antes de privar al individuo de un derecho propietario eran parte fundamental del debido proceso. Allí se declaró inconstitucional un estatuto que permitía el embargo de salarios sin una notificación al deudor, y sin derecho a una vista previa. En *Fuentes v. Shevin*, ante, se expresó que el debido proceso exige la notificación previa y la celebración de una vista antes de privar a un individuo de su propiedad. En este caso se declararon inconstitucionales estatutos de Florida y Pensilvania que permitían al vendedor, a plazos asegurados, a reposeer la mercancía sin previa notificación o vista, sin orden de juez y sólo por mandato expedido por secretario del tribunal. Se reconoció, además, que podrían existir "circunstancias extraordinarias" que justificaran la *posposición* de la notificación y celebración de vista hasta *después* de concederse el remedio solicitado. Estas circunstancias, sin embargo, debían ser realmente excepcionales.

En *Mitchell v. W.T. Grant Co.*, ante, el Tribunal Supremo de Estados Unidos validó un estatuto de embargo, que no requería notificación ni vista previa debido a que el demandante tenía en este caso un *gravamen sobre la propiedad.*([6]) Este *previo interés propietario*, paralelo al del deudor (*vendor's liens*), unido a que el riesgo de error era mínimo porque la posibilidad de recobrar envolvía asuntos poco complicados, justificaba una diferencia en opinión de dicho Tribunal. La solicitud del demandante, resolvió el Tribunal, debía demostrar que estaba dentro del poder del demandado el ocultamiento, disposición o deterioro de la

---

"The Fourteenth Amendment draws no bright lines around three-day, 10–day, or 50–day deprivations of property. Any significant taking of property by the State is within the purviews of the Due Process Clause."

([6]) *Mitchell v. W.T. Grant Co.*, 416 U.S. 600 (1973), limitó la norma establecida en *Fuentes v. Shevin*, ante, al expresar que ésta iba dirigida a los estatutos de reposesión y embargo que conferían un poder excesivo a los litigantes privados sin la participación de un juez. Cuevas Segarra, *op. cit.*, págs. 337–338.

propiedad o del producto de la misma, o la remoción de la propiedad del lugar durante el litigio. El estatuto posponía la celebración de la vista para después de efectuarse el embargo.(⁷)

En 1991, el Tribunal Supremo de Estados Unidos resolvió *Connecticut v. Doehr*, ante, donde se impugnó la constitucionalidad de un estatuto que permitía el embargo preventivo *sin* notificación a la parte adversa, *sin* celebración de vista previa, *ni* prestación de fianza. En este caso, luego de efectuarse el embargo, se le notificó del mismo al demandado y se le dio la oportunidad posterior de una vista. Los hechos del caso de *Connecticut v. Doehr*, ante, surgen de una reclamación por los daños y perjuicios causados por el demandado a consecuencia de una agresión, *reclamación que no envolvía un previo interés propietario en el bien.* El demandante presentó al tribunal una solicitud de embargo acompañada de una declaración jurada en la que justificaba la procedencia de la orden solicitada. A base de estos documentos, el Tribunal Superior del estado de Connecticut ordenó el embargo de un bien inmueble perteneciente a Doehr. Luego de anotado el embargo, Doehr recibió la notificación y se le advirtió de su derecho a una vista en la que podría impugnar el embargo. En lugar de impugnar el embargo, Doehr acudió ante el Tribunal Federal de Distrito alegando que la referida regla procesal era inconstitucional por que le privaba de un interés de propiedad sin un debido proceso de ley, al amparo de la Emda. XIV de la Constitución de Estados Unidos, ante. El Tribunal de Distrito resolvió que el estatuto era constitucional; no así el Segundo Circuito de Apelaciones, que resolvió que este procedimiento *ex parte* no satisfacía el requisito constitucional del debido proceso de ley. El Tribunal Supremo *confirmó* la

(⁷) Posteriormente, en *North Georgia Finishing, Inc. v. Di-Chem, Inc.*, 419 U.S. 601 (1975), al reafirmarse la amplia norma establecida en *Fuentes v. Shevin*, ante, el Tribunal anuló un estatuto que permitía el embargo de una cuenta bancaria sin prestación de fianza, y sin notificación u oportunidad de vista alguna, con tan sólo la expedición de una orden autorizada por el secretario del tribunal.

decisión del Circuito y *determinó que el estatuto en contro-versia había sido aplicado de forma inconstitucional al per-mitir una orden de embargo sin una notificación y vista previa.*

El Tribunal Supremo en *Connecticut v. Doehr*, ante, hizo su análisis a la luz de los requisitos de *Mathews v. Eldridge*, ante, a saber: interés afectado, riesgo de una deci-sión errónea que prive al individuo de su interés y el inte-rés gubernamental protegido.[8] Resolvió que los intereses propietarios afectados por el embargo eran significativos, puesto que de ordinario un embargo puede afectar el título, puede menoscabar la posibilidad de vender o enajenar de otra forma la propiedad, tiene efecto sobre el crédito, re-duce las posibilidades de obtener préstamos (*home equity loans*) o de obtener hipotecas adicionales, o afectar las ya establecidas. Expresó, además, que con la aplicación de un estatuto como el impugnado, el Estado abría la posibilidad de privar a una persona de su propiedad por error, ya que se requería tan sólo la presentación de una declaración jurada. El Tribunal también expresó que el mero interés del demandante en asegurar el cobro de la sentencia no justificaba el gravamen sobre la propiedad del demandado sin que se le concediera la oportunidad de ser oído.

■ En *Connecticut v. Doehr*, ante, a la luz de los he-chos ante sí, el Tribunal Supremo resolvió que antes de expedir la orden de embargo sobre un bien en el cual el

---

[8] Como es de observar, el tercer paso de dicho análisis, según pautado en *Mathews v. Eldridge*, 424 U.S. 319 (1979), requiere que el tribunal considere *el in-terés gubernamental*. En *Connecticut v. Doehr*, ante, sin embargo, el Gobierno no era parte y se trataba de una acción de daños y perjuicios entre partes privadas, por lo que no era necesario considerar el interés gubernamental envuelto. La Mayoría, por lo tanto, modificó este tercer paso para este caso particular al expresar:

"... and third, in contrast to *Mathews*, principal attention to the interest of the party seeking the prejudgment remedy, with, nonetheless, due regard for any anci-llary interest the government may have in providing the procedure or forgoing the added burden of providing greater protections." (Énfasis suplido.) *Connecticut v. Do-ehr*, ante, pág. 13.

Conforme a ello, se procede a hacer un balance entre los intereses de las partes privadas para así garantizar el cumplimiento del debido proceso de ley.

demandante no tenía un previo interés propietario, la corte del estado de Connecticut debió notificar al demandado y efectuar una vista previa.(⁹) El Tribunal expresó que el requisito de vista previa sólo podía ser excusado en circunstancias extraordinarias. Dicho Foro definió "circunstancias extraordinarias" como aquellas en las que se demuestra que existen razones que llevan a pensar que el demandado está llevando a cabo actos encaminados a transferir o gravar sus propiedades de manera tal que impida la ejecución en su día de una sentencia que le fuera eventualmente adversa.(¹⁰)

La referida jurisprudencia, sobre los requisitos exigidos por el debido proceso de ley en el aseguramiento de una sentencia por embargo, nos obliga. A la luz de lo antes expuesto, examinamos si nuestra Regla 56.4 de Procedimiento Civil, ante, es o no constitucional.

## IV

■ Las Reglas de Procedimiento Civil de 1979 reconocen *el embargo* como uno de los *remedios provisionales* que puede dictar un tribunal, a solicitud del reclamante, para asegurar la efectividad de una sentencia.(¹¹) Este re-

---

(⁹) *Cuatro (4) de los Jueces Asociados del Tribunal Supremo expresaron que la prestación de una fianza debería ser requerida en adición a la notificación y vista previa al embargo.* Los Jueces Asociados Señores Marshall, Stevens, O'Connor y White expresaron: "... neither a hearing nor an extraordinary circumstance limitation eliminates the need for a bond, no more than a bond allows waiver of these other protections. To reconcile the interests of the defendant and the plaintiff accurately, due process generally requires all of the above." *Connecticut v. Doehr*, ante, pág. 21.

(¹⁰) El Tribunal Supremo de Estados Unidos tomó conocimiento judicial de que en la mayoría de los estados se requiere la celebración de una vista previa o se requiere demostrar la existencia de circunstancias extraordinarias o apremiantes, o ambos requisitos, antes de permitir el embargo preventivo ex parte. *Connecticut v. Doehr*, ante, pág. 17. Véase Comentario, *Caso Connecticut v. Doehr, 59 U.S.L.W. 4587 (1991)*, 7 (Núm.2) Forum 30 (1991).

(¹¹) El embargo "es una interdicción jurídica en el patrimonio del deudor, decretada a petición ex parte del acreedor reclamante. Uno de sus efectos procesales es el de sujetar o adscribir los bienes embargados al cumplimiento de la obligación o reclamación en el proceso principal, es decir, asegurar la efectividad de la sentencia que haya de dictarse en el caso de prosperar la acción ejercitada. Como medida

medio provisional puede ser concedido en todo pleito, antes o después de dictarse la sentencia. El procedimiento de embargo, al igual que la prohibición de enajenar, son regulados por las Reglas 56.2 a 56.4 de Procedimiento Civil, 32 L.P.R.A. Ap. III, las cuales establecen:

*Regla 56.2*:

No se concederá, modificará, anulará ni se tomará providencia alguna sobre un remedio provisional, *sin* notificar a la parte adversa *y sin* celebrar una vista, *excepto* según se dispone en las Reglas 56.4 [sobre embargo o prohibición de enajenar] y 56.5 [sobre orden para hacer o desistir de hacer]. (Énfasis suplido.)[12]

*Regla 56.3*:

Se podrá conceder un remedio provisional *sin* la prestación de fianza en cualquiera de los siguientes casos:

(1) Si apareciere de documentos públicos o privados, según definidos por ley, firmados ante una persona autorizada para administrar juramento, que la obligación es legalmente exigible; o

(2) Cuando se tratare de un litigante insolvente que estuviere expresamente exceptuado por ley para el pago de aranceles y derechos de radicación y a juicio del tribunal la demanda adujere hechos suficientes para establecer una causa de acción cuya probabilidad de triunfo fuere evidente o pudiere demostrarse, y hubiere motivos fundados para temer, previa vista al efecto, que de no obtenerse inmediatamente dicho remedio provisional, la sentencia que pudiera obtenerse resultaría académica porque no habría bienes sobre los cuales ejecutarla; o

(3) Si se gestionare el remedio después de la sentencia.

En caso de que el tribunal conceda el remedio provisional sin la prestación de fianza conforme lo dispuesto en esta regla, podrá excluir en su orden determinados bienes.

*En todos los demás casos*, el tribunal *exigirá* la prestación de una fianza suficiente para responder por todos los daños y perjuicios que se causen como consecuencia del aseguramiento. Un demandado o querellado podrá, sin embargo, retener la pose-

---

cautelar o asegurativa su vida o eficacia depende de la acción entablada". *Alum Torres v. Campos del Toro*, 89 D.P.R. 305, 321 (1963).

[12] La filosofía de la Regla 56.2 de Procedimiento Civil, 32 L.P.R.A. Ap. III, consiste en que una parte en un pleito debe ser oída antes de ser sometida al rigor judicial de una orden. *Bermúdez v. Tribunal Superior*, 97 D.P.R. 825 (1969).

sión de bienes muebles embargados por un demandante o reclamante, prestando una fianza por tal suma que el tribunal estime suficiente para responder por el valor de dicha propiedad. El afianzamiento por el demandado de la suma embargada, dejará sin efecto el embargo. (Énfasis suplido.)

*Regla 56.4:*

Si se *hubiere cumplido* con los requisitos de la Regla 56.3, *el tribunal deberá expedir, a moción ex parte de un reclamante, una orden de embargo o de prohibición de enajenar.* En el caso de bienes inmuebles, tanto el embargo, así como la prohibición de enajenar se efectuarán anotándolos en el registro de la propiedad y notificándolos al demandado. En el caso de bienes muebles, la orden se efectuará depositando los bienes de que se trate con el tribunal, o con la persona designada por el tribunal bajo la responsabilidad del reclamante. El tribunal podrá ordenar, a petición de cualquiera de las partes, la venta en pública subasta de los bienes fungibles cuyo embargo o prohibición de enajenar se haya decretado, consignándose el producto de su venta en la forma dispuesta por el tribunal.

La parte que solicite la designación de una persona como depositario de los bienes a embargarse deberá acreditar su dirección y teléfono si lo tuviere tanto residencial como de empleo o negocio. El depositario designado deberá notificar inmediatamente al tribunal, bajo el epígrafe del caso, cualquier cambio de dirección o teléfono, de sitio o condición de los bienes. (Énfasis suplido.)

Leídas integralmente y en conjunto, las transcritas disposiciones reglamentarias establecen, *como norma general,* que en todo caso en que se solicite algún remedio provisional *se deberá notificar a la parte adversa y celebrar una vista previa,* Regla 56.2, ante, *y se deberá exigir la prestación de fianza,* Regla 56.3, ante. Este requisito es igualmente aplicable a los embargos, como remedio provisional para aseguramiento de la efectividad de la sentencia.[13] *Por excepción,* la citada Regla 56.4 permite

---

[13] El propósito del mecanismo de embargo es preservar los bienes del deudor e impedir su traspaso y ocultación de manera que quien reclame un derecho contra éste, pueda ejecutar satisfactoriamente un mandato judicial. *García v. The Commonwealth Ins. Co.,* 118 D.P.R. 380 (1987); *Vda. de Galindo v. Cano,* 108 D.P.R. 277 (1979).

que el tribunal expida una orden de embargo *ex parte* —esto es, sin notificación y vista previa— *siempre que* el reclamante preste *una fianza* suficiente para responder por todos los daños y perjuicios que se puedan causar como consecuencia del aseguramiento, Regla 56.4, ante. Por otro lado, *sólo* se podrá conceder un embargo u otro remedio provisional *sin* la prestación de fianza cuando: (1) apareciere en documentos públicos o privados que la obligación es legalmente exigible; (2) se tratare de un litigante insolvente, que la demanda adujere hechos suficientes de una causa de acción y hubiere motivos fundados, previa vista, de que si no se concede el remedio la sentencia sería académica, o (3) se solicitare el remedio después de la sentencia. Regla 56.3, ante.

## V

Como vemos, y en cuanto a la controversia específica que plantea el caso hoy ante nuestra consideración, la citada Regla 56.4, permite, *previa prestación de fianza,* la expedición de una orden de embargo en forma *ex parte* sin darle notificación al demandado, sin brindarle la oportunidad de ser oído y sin exigir al demandante demostrar su probabilidad de prevalecer en los méritos, independientemente de que dicha reclamación estuviere fundada en un previo interés propietario en el bien a ser embargado o existieren circunstancias extraordinarias para posponer la vista.([14]) Según nuestro ordenamiento, *la prestación de una*

---

([14]) En *Domínguez Talavera v. Tribunal Superior,* 102 D.P.R. 423, 427 (1974), sostuvimos la constitucionalidad de la Regla 56.4 de Procedimiento Civil, 32 L.P.R.A. Ap. III. Expresamos que la misma satisface las exigencias del debido proceso, ya que logra un equilibrio entre los intereses del acreedor y del deudor. Expresamos, a la pág. 427, que ésta garantiza el debido proceso:

"(a) concediendo un remedio provisional que preserva la integridad del bien, generalmente la única garantía de cuenta, de la continuada erosión y decadencia de su valor económico consecuencia de su uso por el deudor; (b) impide la destrucción, traspaso u ocultación de los bienes por un deudor inescrupuloso que bien podría ser su única reacción a un previo aviso de que hay el propósito de quitarle la propiedad; (c) el requisito de fianza o la alternativa de autenticidad documentada de la solicitud

*fianza es la llave maestra que excusa al demandante de la previa notificación y vista al embargar un bien del demandado.*

Al analizar la Regla 56.4, ante, a la luz de los factores esbozados en *Mathews v. Eldridge,* ante, podemos concluir que la expedición de una orden de embargo sobre un bien *afecta significativamente* el interés propietario del dueño sobre éste. La misma puede afectar la titularidad sobre el bien y reducir las oportunidades crediticias basadas en el mismo. Esta orden puede limitar las posibilidades de enajenación de dicha propiedad. *Connecticut v. Doehr,* ante. No hay duda que un bien inmueble que esté gravado por una orden de embargo no es "atractivo" para ningún comprador, arrendador o cualquier otra persona que pudiera estar interesado en el mismo. En el caso de embargo de bienes muebles esto afecta significativamente al dueño del mismo, ya que se le priva de su posesión lo cual para él puede tener una utilidad inmediata de tipo económico. *Soc. de Gananciales v. Rodríguez,* 116 D.P.R. 468, 472 (1985).

En adición, la expedición de una orden de embargo, sin notificación ni vista previa, *aumenta los riesgos de hacer una determinación errónea que injustamente prive al dueño de su interés propietario sobre el bien.* Ello en vista de que el mero examen por el tribunal de las alegaciones comprendidas en una moción o demanda no es suficiente, pues difícilmente el juez puede hacer una apreciación realista sobre las posibilidades del promovente de prevalecer a base de las alegaciones hechas por y en beneficio del propio

---

de embargo que sienta una probabilidad de que el demandante ha de prevalecer, con la imprescindible intervención del tribunal, minimizando el riesgo de que se expida una orden errónea; y (d) el deudor tiene derecho a una vista rápida donde podrá cuestionar todo procedimiento y reducir a un mínimo su privación de propiedad y el tiempo que ésta se halle en *custodia legis* o en poder del acreedor."

Cabe señalar que los hechos acaecidos en *Domínguez Talavera v. Tribunal Superior,* ante, son distinguibles de los del caso ante nos. Allí el demandante era el cesionario de un contrato de venta condicional debidamente inscrito y el embargo que solicitó iba dirigido al vehículo objeto de la venta condicional. En el caso de autos, la parte demandante no tiene interés previo sobre los bienes embargados.

demandante.([15]) Los hechos del presente caso constituyen un buen ejemplo de ello. La reclamación instada contra Stowell es una en cobro de dinero por servicios profesionales *alegadamente* prestados y no pagados, la cual *no* fue acompañada de ningún documento que acreditara fehacientemente la misma. Distinta sería la situación si con la moción o demanda en cobro de dinero el promovente acompaña prueba documental fehaciente de la cual se desprende que la deuda objeto del pleito es una líquida, vencida y exigible.

Aunque la prestación de una fianza reduce los efectos o consecuencias de una decisión errónea, *Mitchell v. W.T. Grant Co.*, ante, pág. 617, la prestación de la misma, sin ninguna garantía adicional no puede prevenir el daño que la ausencia de vista puede ocasionar. *Connecticut v. Doehr*, ante.([16]) Por último, cabe mencionar que el interés del Estado es mínimo, ya que se reduce a ayudar a que el demandante pueda asegurar la ejecución de una futura sentencia que pudiera dictarse a su favor. Véase Regla 56.1 de Procedimiento Civil, 32 L.P.R.A. Ap. III.

Resolvemos, en consecuencia, que a la luz de las disposiciones pertinentes de la Constitución de Puerto Rico y de Estados Unidos, la vigente Regla 56.4, ante, es inconstitucional *en tanto y en cuanto permite* que un tribunal expida una orden de embargo, sin la celebración de una vista previa, en aquellas situaciones en que el reclamante: no ha alegado o demostrado tener un previo interés propietario sobre la cosa embargada,([17]) *Mitchell v. W.T. Grant*

---

([15]) En *Connecticut v. Doehr*, ante, pág. 16, se expresa que la posibilidad de una vista *post* embargo, al igual que el derecho a una posterior revisión judicial del mismo y la concesión de doble daño si la reclamación fue interpuesta sin causa probable, *no* reduce los riesgos de una decisión errónea.

([16]) Opinión concurrente de los Jueces Asociados Señores White, Marshall, Stevens y O'Connor, pág. 18.

([17]) Entiéndase que el previo interés propietario sobre bienes muebles o inmuebles del deudor, se da cuando media entre otros: "hipotecas, ventas condicionales, arrendamientos financieros ('leasing') y la situación de copropiedad que se presenta

*Co.*, ante; no ha alegado o demostrado *la existencia de circunstancias extraordinarias, Connecticut v. Doehr*, ante, ni ha alegado o demostrado la probabilidad de prevalecer mediante prueba documental fehaciente de la cual se desprenda que la deuda es una líquida, vencida y exigible. *Únicamente en estas situaciones es que un tribunal podrá posponer la celebración de dicha vista hasta después de trabado el embargo.*([18])

---

en casos de división judicial de bienes gananciales." Comentarios, ante, pág. 31.

([18]) A tono con lo resuelto en *Connecticut v. Doehr*, ante, el Comité Asesor Permanente de Reglas de Procedimiento Civil de la Conferencia Judicial sometió en 1991 una enmienda a la Regla 56.4 de Procedimiento Civil, ante, en la que incorpora el principio de que la cláusula del debido proceso exige la celebración de algún tipo de vista adversativa antes de privar a un individuo de cualquier derecho de propiedad. Aunque dicha enmienda aún no ha entrado en vigor, su lenguaje resulta ser muy persuasivo. La misma lee como sigue:

"Regla 56.4 Embargo o prohibición de enajenar

"(a) Ninguna orden de embargo, o de prohibición de enajenar será expedida, sin la celebración de una vista, a menos que el demandante:

"(1) acredite de forma fehaciente que su demanda aduce hechos suficientes para establecer una causa de acción designada por el tribunal, bajo la responsabilidad para establecer una causa de acción con probabilidad de prevalecer;

"(2) demuestre tener motivos fundados para temer que de no ser obtenido inmediatamente el embargo, o la prohibición de enajenar, el demandado habrá de enajenar, gravar, desaparecer, o destruir los bienes a ser embargados u otras circunstancias extraordinarias, de manera que no podría satisfacer la sentencia que en su día pueda ser dictada, y

"(3) cumpla con los requisitos de la Regla 56.3, en caso de que lo solicitado fuere la prohibición de enajenar.

"(b) De no cumplir el demandante con los requisitos antes señalados sólo será expedido el embargo o la prohibición de enajenar luego de una vista celebrada después de haber sido citado el demandado, y luego de que el demandante:

"(1) establezca la probabilidad que tiene de prevalecer finalmente en los méritos, en caso de embargo y

"(2) cumpla con los requisitos de la Regla 56.3 en caso de que lo solicitado fuere la prohibición de enajenar.

"(c) En el caso de bienes inmuebles, tanto el embargo como la prohibición de enajenar serán efectuados anotándolos en el Registro de la Propiedad.

"(d) En el caso de bienes muebles, la orden será efectuada depositando los bienes con el tribunal o con la persona designada por el tribunal, bajo la responsabilidad del reclamante. El tribunal podrá ordenar, a petición de cualquiera de las partes, la venta en pública subasta de los bienes fungibles cuyo embargo o prohibición de enajenar haya sido decretado, consignando el producto de su venta en la forma dispuesta por el tribunal.

"La parte que solicite la designación de una persona como depositario de los bienes a ser embargados deberá acreditar su dirección y teléfono, si lo tuviere, tanto residencial como de empleo o negocio. El depositario designado deberá notificar inmediatamente al tribunal, bajo el epígrafe del caso, cualquier cambio de dirección o teléfono, de sitio o condición de los bienes." Conferencia Judicial de Puerto Rico, *Proyecto de Reglas de Procedimiento Civil*, págs. 251–254 (1991).

## VI

En el caso de autos el tribunal de instancia expidió varias órdenes de embargo sobre los bienes de la parte demandada *sin celebrar una vista adversativa y sin que la parte demandante* alegara o demostrara que tenía un *previo interés propietario* en los bienes a ser embargados, que no fuera el de asegurar la ejecución de la futura sentencia que pudiera decretarse a su favor. *Mitchell v. W.T. Grant Co.*, ante; *Connecticut v. Doehr*, ante. El démandante no alegó ni demostró *la posibilidad de que el demandado desapareciera los bienes* con el fin de no satisfacer la sentencia que en su día pudiera dictarse. *Sniadach v. Family Finance Corp.*, ante. La parte promovente tampoco alegó ni demostró, mediante *prueba documental fehaciente* de la cual se desprendiera la existencia de una deuda líquida, vencida y exigible, tener probabilidades de prevalecer en los méritos.

A la luz de este cuadro procesal y de las razones invocadas por el demandante para proceder como lo hizo, concluimos que la orden de embargo emitida por el tribunal de instancia en el presente caso privó a los demandados de un derecho propietario sin un debido proceso de ley en violación del Art. II, Sec. 7 de la Constitución del Estado Libre Asociado, ante, y de las Emdas. V y XIV de la Constitución de Estados Unidos, ante.[19]

Por los anteriores fundamentos *se deja sin efecto la orden del Tribunal Superior, Sala de Humacao, de 17 de enero de 1992. Dicha sala deberá notificar a las partes y celebrar una vista adversativa en la que determinará la procedencia del embargo solicitado por la parte demandante, sobre cualesquiera de los bienes pertenecientes a los demandados, conforme a lo expresado y establecido en esta opinión.*

---

[19] Por el resultado a que hemos llegado, se dispone del resto de los errores señalados.

*Se dictará sentencia de conformidad.*

El Juez Asociado Señor Fuster Berlingeri emitió una opinión disidente.

— O —

Opinión disidente emitida por el Juez Asociado Señor Fuster Berlingeri.

La mayoría del Tribunal interpreta el dictamen del Supremo de Estados Unidos en *Connecticut v. Doehr*, 501 U.S. 1, 111 S.Ct. 2105, 115 L.Ed.2d 1 (1991), en términos más restrictivos que lo que esa decisión requiere y, en consecuencia, termina declarando que según versa actualmente la Regla 56.4 de Procedimiento Civil, 32 L.P.R.A. Ap. III, ésta es inconstitucional. Disiento de esa determinación porque reiteradamente hemos afirmado la política judicial de decretar la inconstitucionalidad de una ley sólo cuando ello es *indispensable*, y en esta ocasión no lo es. *Hernández Agosto v. Betancourt*, 118 D.P.R. 79 (1986); *Molina v. C.R.U.V.*, 114 D.P.R. 295 (1983); *P.P.D. v. Admor. Gen. de Elecciones*, 111 D.P.R. 199 (1981); *P.S.P. v. Com. Estatal de Elecciones*, 110 D.P.R. 400 (1980); *Vives Vázquez v. Tribunal Superior*, 101 D.P.R. 139 (1973); *Mari Bras v. Alcaide*, 100 D.P.R. 506 (1972); *Pueblo ex rel. M.G.G.*, 99 D.P.R. 925 (1971); *Suárez Sánchez v. Tribunal Superior*, 92 D.P.R. 507 (1965); *E.L.A. v. Aguayo*, 80 D.P.R. 552 (1958); *Walker v. Tribl. Contribuciones y Tesorero,* 72 D.P.R. 698 (1951); *Spanish Am. Tobacco Co. v. Buscaglia*, 71 D.P.R. 991 (1950); *Tesorero v. Tribl. Contribuciones y Kemper*, 71 D.P.R. 298 (1950); *Nitrate Agencies Co. v. Domenech, Tes.*, 44 D.P.R. 515 (1933); *El Pueblo v. García & García*, 22 D.P.R. 817 (1915).

En *Connecticut v. Doehr*, supra, el Tribunal Supremo federal *no* resolvió precisamente que "antes de expedir una

orden de embargo sobre un bien en el cual el demandante no tenía un previo interés propietario la corte del Estado de Connecticut debió notificar al demandado y efectuar una vista previa", como afirma la mayoría del Tribunal en su opinión. Si algo surge con meridiana claridad de los pronunciamientos del Tribunal Supremo federal en *Connecticut v. Doehr*, supra, es que los requerimientos del debido proceso de ley *no son* susceptibles de formularse mediante reglas o preceptos escuetos y tajantes. Por el contrario, el Tribunal Supremo federal en *Connecticut v. Doehr*, supra, *expresamente reafirma* la conocida noción de que los requerimientos del debido proceso de ley varían de caso en caso y que los dictámenes judiciales basados en esa garantía constitucional dimanan siempre de un análisis de los hechos y factores pertinentes de la situación concreta. El más alto foro norteamericano en *Connecticut v. Doehr*, supra, pág. 13, repasó brevemente los diversos pronunciamientos suyos sobre el particular en casos afines y expresamente reiteró que:

> These cases "underscore the truism that '[d]ue process unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances' ".

A renglón seguido, el Tribunal Supremo federal, en *Connecticut v. Doehr*, supra, pasó a hacer un análisis de los varios elementos que consideró pertinentes para llegar a una decisión, enfatizando que, igual que en *Mathews v. Eldridge*, 424 U.S. 319 (1976), era necesario examinar tres (3) vertientes del asunto (*a three fold inquiry*). En su análisis, el Tribunal Supremo federal identificó tres (3) circunstancias que inclinaban la balanza en la dirección de su dictamen. Resaltó, en primer lugar, que el embargo impugnado tenía efectos significativos sobre los derechos de propiedad del demandado. Apuntó, en segundo lugar, que el riesgo de que el demandado pudiese ser erróneamente privado de su propiedad era sustancial, por la dificultad que

tenía el tribunal de instancia de decidir a priori los méritos de la acción del demandante. En cuanto a esta segunda circunstancia, el Tribunal Supremo federal hizo hincapié en que el caso no trataba de la situación usual para embargos previos, que es aquella en la que un acreedor demanda a su deudor. En *Connecticut v. Doehr*, supra, la demanda era una acción civil por acometimiento y agresión, y el embargo se trabó para asegurar la sentencia que pudiese obtenerse. Por eso el Foro federal expresó que:

> Unlike determining the existence of a debt or delinquent payments, the issue does not concern ordinarily uncomplicated matters that lend themselves to documentary proof" .... *Connecticut v. Doehr*, supra, pág. 15.

Añadió más adelante que:

> As we and the Court of Appeals have noted, disputes between debtors and creditors more readily lend themselves to accurate *ex parte* assessments of the merits. Tort actions, like the assault and battery claim at issue here, do not. (Énfasis suplido.) *Connecticut v. Doehr*, supra, pág. 17.

Abundando sobre esta segunda circunstancia, el máximo foro judicial de Estados Unidos destacó además que en la situación en *Connecticut v. Doehr*, supra, no existían salvaguardas procesales que disminuyesen el riesgo al demandado que sufre el embargo. Indicó el Tribunal Supremo federal que el estatuto en cuestión, por ejemplo, no requería que el demandante prestara *fianza* en apoyo de su embargo. La ausencia de dicho requisito sobre prestación de fianza fue evidentemente de gran peso en la decisión de la mayoría del Tribunal Supremo. Al principio de su opinión, en la parte I que fue unánime, se formuló la controversia del caso *Connecticut v. Doehr*, supra, pág. 9, en los siguientes términos.

> This case requires us to determine whether a state statute that authorizes prejudgment attachment of real estate without prior notice or hearing, without a showing of extraordinary cir-

cumstances, and *without a requirement that the person seeking the attachment post a bond*, satisfies the Due Process Clause of the Fourteenth Amendment. We hold that, as applied to this case, it does not. (Énfasis suplido.)

Finalmente, el Tribunal Supremo, en *Connecticut v. Doehr*, supra, señaló que en ese caso no se había formulado una alegación debidamente fundamentada de que el demandante necesitaba hacer el embargo para asegurar la ejecución de su sentencia frente a posibles acciones del demandado dirigidas a no satisfacer la que en su día pudiera dictarse. Por lo tanto, juzgó el Tribunal que los intereses del demandante eran *de minimis*.

Como puede apreciarse, el Tribunal Supremo federal sopesó detenidamente tanto los intereses como los riesgos del demandado frente a los del demandante para *en ese contexto* decidir si era necesaria la celebración de una vista previa al embargo. No puede afirmarse con precisa corrección que el Foro federal en *Connecticut v. Doehr*, supra, estableció el requisito de vista previa para embargos en casos en los que el demandante no tiene interés propietario previo, no ha alegado o demostrado la existencia de circunstancias extraordinarias ni ha alegado o demostrado la probabilidad de prevalecer mediante prueba documental fehaciente de una deuda líquida, vencida y exigible, como reclama la mayoría en su opinión. *El dictamen federal es mucho más complejo que eso y permite embargos sin vista previa que la norma que anuncia la mayoría prohibiría*. En efecto, la crítica erudita en Estados Unidos ha reconocido que la decisión de *Connecticut v. Doehr*, supra, no excluye embargos sin vista previa en casos de derechos de acreedores en los que se preste fianza, el procedimiento *ex parte* de embargo lo conduzca un juez neutral y exista derecho a una vista expedita posterior al embargo. Véase 2 *Treatise on Constitutional Law: Substance and Procedure* Sec. 17.9, pág. 697 esc. 72 (1992).

Más aún, es importante destacar que en *Connecticut v. Doehr*, supra, el Tribunal Supremo federal *no decretó* la

inconstitucionalidad de la regla procesal estatal que allí se impugnó, como hace la mayoría en el caso de marras, sino que meramente limitó su decisión al dictamen de que la norma estatal en cuestión, *según aplicada al caso ante sí*, no cumplía con los requisitos del debido proceso de ley.

Por las razones anteriores, me parece que en el caso ante nos *no es indispensable* decretar la inconstitucionalidad de la Regla 56.4 de Procedimiento Civil, *supra*. El caso ante nos es claramente distinguible del de *Connecticut v. Doehr*, supra, en al menos dos (2) aspectos medulares: (1) no se trata de una acción civil torticera y (2) el demandado que sufrió un embargo tenía una fianza a su favor. Como no existe, pues, la segunda de las tres (3) circunstancias que el Foro federal consideró determinantes en su decisión en *Connecticut v. Doehr*, supra, es al menos arguible que el propio Tribunal Supremo federal, en el caso ante nos, no hubiese decidido que nuestra regla es inconstitucional.

Además, aun si se concluyese que la situación del caso ante nos y la de *Connecticut v. Doehr*, supra, son esencialmente iguales, el remedio más adecuado no es declarar la regla nuestra inconstitucional, sino más bien *interpretarla* conforme a *Connecticut v. Doehr*, supra; es decir, *atemperarla* a las circunstancias, haciendo los pronunciamientos que sean necesarios para validar la regla y sostener así su constitucionalidad, conforme a nuestra doctrina sobre el deber de los tribunales en estos casos. *P.S.P. v. Com. Estatal de Elecciones*, supra; *Nitrate Agencies Co. v. Domenech Tes.*, supra. A lo sumo, lo que procedía era hacer lo mismo que hizo el Tribunal Supremo federal: resolver que, *según aplicada la Regla en el caso de marras*, no se cumplía con los requisitos del debido proceso de ley. Como la mayoría ha optado por seguir una ruta distinta, más estrecha y limitante, disiento.