TEXTO COMPLETO DE LA SENTENCIA
Alberto Fernández Sánchez, Pamela Allicock Puddicombe y la Sociedad Legal de Gananciales compuesta por ambos (“los recurrentes”), mediante recurso de revisión administrativa, solicitan la revocación de una resolución de la Junta de Planificación (“la Junta”) en la que declaró “NADA QUE PROVEER” a la petición de éstos para que se dejara sin efecto una consulta de ubicación para un proyecto residencial unifamiliar en un predio de terreno del cual son titulares en común pro indiviso de dos participaciones.
Examinados en su totalidad los hechos del caso y el derecho aplicable, revocamos la resolución recurrida.
*866 I
En diciembre de 1996, la Junta aprobó una consulta de ubicación para la segregación y el desarrollo de 25 cuerdas para vivienda unifamiliar en ocho (8) solares frente al mar y un remanente que no tiene acceso directo al mar y que está separado de los otros solares por una carretera municipal. Dicha finca ubica en la Carretera 986, Sector Punta Las Picúas del Barrio Zarzal de Río Grande. Los recurrentes son titulares en común pro indiviso de dos participaciones de 0.83% cada una, inscritas en el Registro de la Propiedad al folio 174 y 175, inscripción 14ta y 15ta, del tomo 314 de Río Grande.
Manifiestan los recurrentes que en el 2007, durante su participación como demandados en un pleito relacionado, incoado en el Tribunal de Primera Instancia por los demás propietarios de la finca para la disolución de la comunidad de bienes, se enteraron que la Junta había aprobado la consulta de ubicación desde el 1996. Al examinar los documentos que obraban en el expediente de la Junta, los recurrentes se percataron de que “varios de los documentos sometidos como requisitos para la misma habían sido alterados y falsificados y que, en efecto, no contaban con la autorización del total de los titulares en la comunidad... ”. Además, de la resolución de la Junta no surgía si la consulta en cuestión se refería al solar 15 o al solar 16, del cual eran titulares pro indiviso.
El 13 de noviembre de 2007, los recurrentes presentaron una solicitud de intervención ante la Junta en la que pidieron se dejara en suspenso la aprobación de la consulta de ubicación. Solicitaron, además, que se celebrara una vista en la cual pudieran presentar evidencia para impugnar la decisión de la Junta de aprobar la consulta de ubicación sin el conocimiento y la aprobación de ellos. Luego, el 2 de enero de 2008, la representación legal de los recurrentes envió comunicación al Presidente de la Junta, Ing. Angel D. Rodríguez, informando de varias irregularidades ocurridas en el proceso de aprobación de la consulta de ubicación, entre otros: (1) que en el expediente de la Junta aparecían documentos aparentemente firmados por el Sr. Ramón Antonio Cañete García, otro de los titulares de la finca, quien había fallecido el 13 de diciembre de 1984; (2) que algunos documentos que aparecían en el expediente habían sido alterados con líquido corrector. También reiteró la solicitud de los recurrentes de que se celebrara una vista.
Después de varios trámites procesales, el 15 de mayo de 2008, la Junta emitió resolución “ACLARA[NDO] PARTICULARES a los efectos de indicar que la Consulta Número 1996-22-0850-JPU-S es en la parcela núm. 16 y se corrige la descripción del predio...” y dejando en vigor y efecto todas las otras partes de los informes anteriores no alteradas por dicha resolución. Los recurrentes presentaron escrito ante la Junta el 11 de junio de 2008, solicitando audiencia para la revisión de la resolución del 15 de mayo de 2008 y la paralización de los efectos de la misma. Fundamentaron su solicitud en que: (1) no todos los titulares del inmueble habían comparecido a dar su aprobación; (2) personas que no habían presentado título válido pretendían arrogarse participación en una finca en la que no aparecían como titulares; (3) los recurrentes nunca dieron su aprobación ni a la consulta ni a los procesos ulteriores llevados a cabo en la Administración de Reglamentos y Permisos (“ARPE”).
El 15 de julio de 2008, la Junta notificó una “Resolución de Requerimiento” en la cual decretó el suspenso de la consulta por el término de 30 días y le requirió a la abogada de los recurrentes que se expresara sobre las cartas de 7 de julio de 1996 y 8 de julio de 1996, [1] de las cuales se desprendía que los recurrentes habían firmado la autorización para la segregación. El 21 de julio de 2008, los recurrentes presentaron su contestación a dicho requerimiento. La Junta emitió resolución el 13 de agosto de 2008 “DECLARAjNDO] NADA QUE PROVEER en este momento, toda vez que el asunta [sic] planteado está en el foro judicial, y ante la Junta de Planificación de Puerto Rico, el caso es final y firme en la Consulta Número 1996-22-0850-JPU-S para la ubicación de un proyecto residencial unifamiliar en el Barrio Zarzal del Municipio de Río Grande”.
No conformes con tal determinación, el 30 de septiembre de 2008, los recurrentes presentaron escrito de revisión judicial ante este Tribunal alegando que erró la Junta al emitir una consulta de ubicación de una finca *867 sin la autorización escrita de todos los propietarios de la misma violentando el derecho constitucional de éstos al disfrute de su propiedad; al no revocar la consulta emitida luego de evidenciar irregularidades en documentos falsos y alterados; y al no notificar de la consulta a los propietarios de una finca a pesar de constarle la titularidad de éstos, violentando el debido proceso de ley. El 5 de diciembre de 2008, la Junta presentó su alegato ante nos, señalando que los recurrentes no acompañaron evidencia que le permitiera acreditar a la Junta que las firmas en su expediente no eran fidedignas ni evidencia que el asunto se había llevado a las autoridades investigativas y que las alegaciones de fraude debían estar sostenidas con evidencia sustancial. La Junta también aseveró que la resolución de diciembre de 1996 le fue notificada a los recurrentes por conducto del Sr. José A. Rivera, quien los representaba ante la Junta.
II
Debemos apuntar que los tribunales apelativos deben ser cautelosos al intervenir con las determinaciones administrativas de los foros especializádos, porque éstas merecen gran consideración y respeto. La revisión judicial se limita a determinar si la agencia actuó arbitraria o ilegalmente o en forma tan irrazonable que su actuación constituyó un abuso de discreción. El fundamento para ello es el hecho de que son las agencias administrativas las que poseen la experiencia y los conocimientos altamente especializados sobre los asuntos que se encomiendan. Por tanto, se establece una presunción de legalidad y corrección a favor de las decisiones de las agencias administrativas. Rivera Concepción v. A.R.P.E., 152 D.P.R. 116, 122 (2000); Metropolitana, S. E. v. A.R.P.E., 138 D.P.R. 200, 213 (1995); Fac. C. Soc. Aplicadas, Inc. v. C.E.S., 133 D.P.R. 521, 533 (1993); Murphy Bernabé v. Tribunal Superior, 103 D.P.R. 692, 699 (1975).
A tenor con esta norma de deferencia, los tribunales no alteran las determinaciones de hechos de los organismos administrativos si del expediente administrativo surge evidencia sustancial que las sostenga. La evidencia sustancial “es aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión”. Por lo que para convencer al tribunal de que la evidencia utilizada por la agencia para formular una determinación de hecho no es sustancial, la parte afectada debe demostrar que existe otra prueba en el récord que reduzca o menoscabe el valor probatorio de la evidencia impugnada hasta el punto de que no pueda ser concluido que la determinación de la agencia fue razonable de acuerdo a la totalidad de la prueba que tuvo ante su consideración. En resumen, la deferencia reconocida a la decisión de una agencia administrativa cede en las siguientes circunstancias: (1) cuando no está basada en evidencia sustancial; (2) cuando el organismo administrativo ha errado en la aplicación de la ley; y (3) cuando ha mediado una actuación irrazonable o ilegal. Otero v. Toyota, 163 D.P.R. 716, 727-729 (2005); Ramírez v. Depto. de Salud, 147 D.P.R. 901, 905-906 (1999); Hilton Hotels v. Junta Salario Mínimo, 74 D.P.R. 670, 686-687 (1953).
De otro modo, la Constitución del Estado Libre Asociado de Puerto Rico y las Enmiendas V y XIV de la Constitución de los Estados Unidos de América garantizan el que ninguna persona sea privada de su libertad o propiedad sin el debido proceso de ley. Tomo 1 L.P.R.A., Const. Puerto Rico, Art. II, Sec. 7 y Const. Estados Unidos, Enmiendas V y XIV.
El debido proceso de ley se manifiesta en dos dimensiones distintas: sustantiva y procesal. Bajo la vertiente sustantiva, los tribunales examinan la validez de una ley al amparo de la Constitución con el propósito de proteger los derechos fundamentales de las personas. El Estado está impedido de aprobar leyes o de realizar alguna actuación que afecte de manera irrazonable, arbitraria o caprichosa los intereses de propiedad o de libertad de los individuos. En su vertiente procesal, el aludido precepto le impone al Estado la obligación de garantizar que la interferencia con los intereses de libertad y propiedad del individuo se haga a través de un procedimiento que en esencia sea justo, equitativo y de respeto a la dignidad de los individuos afectados. Hernández v. Secretario, 164 D.P.R. 390, 394-395 (2005); Rivera Rodríguez & Co. v. Stowell Taylor, 133 D.P.R. 881, 887-888 (1993); López Vives v. Policía de P.R., 118 D.P.R. 219, 230-231 (1987).
En vista de que dentro de su función adjudicativa, las agencias administrativas han de interferir con los *868 intereses de libertad y propiedad de los individuos, se hizo extensiva a los procedimientos ante éstas la garantía a un debido proceso de ley. La sección 3.1 de la Ley de Procedimiento Administrativo Uniforme (“L.P.A.U.”), Ley Núm. 170 de 12 de agosto de 1988, según enmendada, 3 L.P.R.A. § 2151, establece que en todo procedimiento adjudicativo formal ante una agencia se salvaguardarán los siguientes derechos: (A) derecho a notificación oportuna de los cargos o querellas o reclamos en contra de una parte; (B) derecho a presentar evidencia; (C) derecho a una adjudicación imparcial; (D) derecho a que la decisión sea basada en el expediente. De esta manera, queda establecido que el derecho a una adjudicación imparcial es parte del debido proceso de ley. Ramírez Ferrer v. Policía de P.R., 158 D.P.R. 320 (2002); Almonte et al. v. Brito, 156 D.P.R. 475, 481-482 (2002).
No obstante lo anterior, nada impide que una agencia administrativa tome una determinación sin celebrar una vista en su fondo, siempre y cuando no exista controversia sobre los hechos y que toda la evidencia documental contenida en el expediente señale la corrección de la determinación de la agencia. La LPAU no dispone específicamente que exista un derecho a una audiencia. Sin embargo, debe observarse que el ejercicio de esas prerrogativas procesales, particularmente la de ser oído y la de presentar evidencia, se hacen efectivas en el contexto de una vista administrativa, por lo que su celebración se torna en sí misma una exigencia del debido proceso de ley. El Tribunal Supremo ha reiterado que el derecho a una vista pública no tendría sentido alguno si se permite que el organismo administrativo fundamente su decisión en evidencia recibida sin el conocimiento de las partes, fuera de la audiencia, sin dar a las partes interesadas la oportunidad de rebatirla o explicarla mediante la repregunta o presentación de otra evidencia en contrario. López y Otros v. Asoc. de Taxis de Cayey, 142 D.P.R. 109, 113-116 (1996); López v. Junta de Planificación, 80 D.P.R. 646, 670 (1958).
Lo importante para conocer si existe el requisito de una audiencia es examinar el estatuto orgánico de la agencia administrativa, conjuntamente con el reglamento interno de la agencia. Véase, D. Fernández Quiñones, Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme, 2da. Ed., Bogotá, Forum, 2001, pág. 305-306.
III
Los recurrentes, en esencia, alegan que la Junta erró al aprobar una consulta de ubicación de una finca en la cual ellos eran titulares de dos participaciones pro indiviso sin que se les notificara sobre la presentación de la consulta de ubicación y sin que se obtuviera la autorización escrita tanto de ellos como de los otros propietarios de la misma. Señalan que la documentación con su firma que consta en el expediente de la Junta fue falsificada, que otros documentos que allí constan fueron falsificados y/o alterados y que la decisión que se tomó se basó en los mismos sin la celebración de una vista en la que pudieran presentar evidencia en contrario y discutir la validez de los aludidos documentos. Concluyen los recurrentes que se ha violentado de esa forma el derecho constitucional que tiene al disfrute de su propiedad sin el debido proceso de ley. Les asiste la razón.
En el caso ante nos, la decisión original de la Junta, aprobando la consulta de ubicación, se hizo sin la alegada participación de los recurrentes, pues, según sus dichos, no fueron notificados de dicha petición. Al enterarse de dicha determinación, solicitaron intervención en el proceso; alegaron que no habían sido notificados del mismo, que no habían autorizado al agrimensor a representarles, que su firma había sido falsificada, que en el expediente obraban documentos falsificados y/o alterados; y peticionaron que se celebrara una vista para presentar toda la evidencia necesaria para sostener su reclamo y para refutar oralmente la evidencia sometida en su contra. Su petición fue denegada. La Junta se cruzó de brazos, amparándose en un “NADA QUE PROVEER”, puesto que la consulta de ubicación ante la agencia era final y firme y un asunto relacionado se encontraba en el foro judicial.
Debemos recordar que las alegaciones de fraude no crean derecho, pues se presume la buena fe. Art. 364 del Código Civil, 31 L.P.R.A. § 1425. Por ello, el que afirma que medió fraude debe probarlo con una certeza razonable, es decir, con preponderancia de prueba que satisfaga la conciencia del juzgador. González v. *869 Quintana, 145 D.P.R. 463, 471 (1998); De Jesús Díaz v. Cabrero, 112 D.P.R. 631, 639 (1982).
Precisamente esa es la situación en el presente caso. Los recurrentes hicieron sus señalamientos de fraude, a saber: que la firma del recurrente (Sr. Alberto Fernández) fue falsificada y que su firma fue ensayada al dorso del documento que constaba en el expediente de la Junta; que allí también aparecía un documento firmado por el Sr. Ramón Antonio Cañete García, quien había fallecido el 31 de diciembre de 1984; y que varios documentos habían sido alterados con líquido corrector. Para probar su alegación de fraude, los recurrentes solicitaron una vista para presentar la prueba que alegaban tener para sustentar el fraude.
Como hemos mencionado, existe una presunción de legalidad y corrección a favor de las decisiones de las agencias administrativas. No obstante, en este caso debemos intervenir con la determinación de la Junta. Al negarle a los recurrentes esa vista para que pudieran presentar su prueba y permitir que la misma formara parte del expediente administrativo, se les privó del mejor medio para probar el fraude alegado y se violó el derecho constitucional que les garantiza el que ninguna persona sea privada de su propiedad sin el debido proceso de ley. Entendemos que en estas circunstancias, la Junta actuó de forma tan irrazonable que su actuación constituyó un abuso de discreción.
IV
Por los fundamentos antes expresados, se revoca la resolución recurrida y se devuelve el caso a la Junta de Planificación para que proceda a la celebración de una vista en la cual los recurrentes puedan aportar prueba del alegado fraude.
Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.
Leda. María E. Pérez Ortiz Secretaria del Tribunal de Apelaciones
ESCOLIO 2009 DTA 32

1. Por error, en la resolución se identificó las cartas como de fecha 7 y 8 de julio de 2007.