Gilberto Gierbolini, Juez Ponente
*823 TEXTO COMPLETO DE LA SENTENCIA
El 23 de marzo de 200,1 los peticionarios de epígrafe, José A. Figueroa Morales, su esposa Oloria Santaella Parés y la Sociedad Legal de Gananciales compuesta por ambos (en adelante Figueroa), Estancias de Bairoa, S. E. (en adelante Estancias de Bairoa), Turabo Management Corp. (en adelante Turabo Management), Jofi Investments, S.E. (en adelante Jofi Investments), Figue Holdings Corporation (en adelante Figue Holdings), Nashua Realty, S.E. (en adelante Nashua Realty) y Jafim Management Corporation (en adelante Jafim Management), presentaron Petición de Certiorari y nos solicitaron la revocación de ciertas Ordenes emitidas por el Tribunal de Primera Instancia, Sala Superior de San Juan, en el caso de Nicolás Rivera Valentín v. José A. Figueroa Morales y otros, Civil Número KAC-96-1442 (504), Sobre Violación de Contrato, Cobro de Dinero y Daños y Perjuicios.
Mediante dichas órdenes, el Tribunal de Primera Instancia ordenó la anotación de un aviso de pleito pendiente sobre un inmueble de Jofi Investments y prohibió a Figueroa, tanto en su carácter personal como en su capacidad de oficial, agente o representante de las entidades jurídicas mencionadas en el párrafo anteáor, llevar a cabo transacciones de cualquier índole con sus bienes o los de dichas entidades sin previa notificación al tribunal de Instancia. Además, dicho tribunal prorrogó indefinidamente las referidas órdenes hasta tanto iuera resuelta la solicitud de recusación presentada por todos los co-demandados.
Por los fundamentos que expondremos, EXPEDIMOS la Petición de Certiorari solicitada, REVOCAMOS las Ordenes recurridas y DEVOLVEMOS el caso al Tribunal de Primera Instancia, Sala Superior de San Juan, para que actúe conforme lo aquí dispuesto.
I
El 7 de noviembre de 1996, Nicolás Rivera Valentín (en adelante Rivera) presentó Demanda de Violación de Contrato, Cobro de. Dinero, y Daños y Pequicios contra Figueroa, José Eugenio Figueroa Santaella, su esposa Fulana de Tal y la Sociedad Legal de Gananciales compuesta por ambos (en adelante Figueroa Santaella), Fisan Inc. (en adelante Fisan), Guaracanal Development Corporation (en adelante Guaracanal Development), Estancias de Bairoa, Turabo Management, Nashua Realty y Jafim Management.
En dicha demanda, Rivera alegó que para la década de 1980 inició una relación contractual con Figueroa para el desarrollo de bienes raíces. Mediante dicha relación contractual, Figueroa aportaría el capital, los servicios legales y la administración de las entidades jurídicas a ser creadas para dichos fines y Rivera sería el encargado de conseguir los permisos, endosos y aprobaciones de las agencias gubernamentales para el desarrollo de los proyectos. Rivera también alegó que mediante la referida relación contractual tanto Figüeroa como él recibirían el 50% de las ganancias netas y que Fisan, Guaracanal Development, Estancias de Bairoa, Turabo Management, Nashua Realty y Jafim Management fueron creadas para el desarrollo de los proyectos.
Por último, Rivera alegó que Figueroa no quería liquidar su participación en dicha relación cofttfactual, a pesar de los requerimiento a tales efectos'y que Figueroa había actuado fraudulentamente para no liquidar la participación reclamada. En consecuencia, Rivera solicitó al Tribunal de Primera Instancia que declarara Con Lugar la demanda y ordenara a Figueroa liquidar la participación reclamada, pagar los intereses sobre la *824 cantidad adeudada y pagar una suma adicional por concepto de los sufrimientos y angustias mentales ocasionados.
El 17 de septiembre de 1997, todos los co-demandados contestaron la demanda y alegaron que la demanda no exponía hechos que justificaran la concesión de un remedio, que Rivera no era accionista, ni socio de las entidades jurídicas demandadas y que los actos llevados a cabo por Figueroa habían sido realizados en su capacidad representativa de dichas entidades jurídicas.
El 29 de abril de 1998, Rivera presentó "Moción en Solicitud de Remedio Provisional" y solicitó al tribunal de instancia que nombrara un síndico o administrador judicial para las entidades jurídicas demandadas porque él temía que Figueroa cometiera actos fraudulentos y/o subterfugios para desaparecer las mismas y dejarlas insolventes. El 14 de mayo de 1998, todos los co-demandados presentaron su Oposición a los remedios provisionales solicitados por Rivera y alegaron que no era procedente nombrar un síndico o un administrador judicial hasta tanto Rivera intentara obtener los otros remedios provisionales enumerados en la Regla 56.1 de Procedimiento Civil, 32 L.P.R.A. Apéndice ni.
El 23 de febrero de 1999, el Tribunal de Primera Instancia celebró vista sobre remedios provisionales. Los co-demandados no asistieron a dicha vista, a pesar de haber sido debidamente citados. Sin embargo, Rivera asistió a la misma y presentó prueba a su favor. El 27 de abril de 1999, Rivera presentó "Moción Solicitando Orden Sobre Remedio Provisional" y alegó que "al día de hoy, ha transcurrido aproximadamente un año desde que la parte demandante solicitó un remedio provisional para asegurar la efectividad de la sentencia y este tribunal aún no se ha pronunciado al respecto." Por ello, Rivera solicitó al Tribunal de Primera Instancia que emitiera la orden provisional solicitada o que, en su defecto, emitiera una orden de embargo o prohibición de enajenar contra los bienes de los co-demandados.
Tras varios incidentes procesales, el 9 de febrero de 2000, el Tribunal de Primera Instancia continuó la vista sobre remedios provisionales, y el 30 de junio de 2000, Rivera presentó Demanda Enmendada. En la misma, Rivera solicitó al Tribunal de Primera Instancia que le permitiera reclamar su legítimo derecho de un 50% sobre varias fincas inscritas a nombre de Guaracanal Development y Nashua Realty.
El 7 de agosto de 2000, los codemandados presentaron su oposición a la demanda enmendada y alegaron que "la descripción e inclusión en la demanda de los inmuebles resulta improcedente pues ello equivale a intentar lograr el hacer descubrimiento de prueba sobre la capacidad económica de los demandados para el supuesto de advenir sentencia a favor del demandante, lo cual es impermisible."
El 21 y 22 de agosto de 2000, el Tribunal de Primera Instancia continuó la vista sobre remedios provisionales, y el 8 de noviembre de 2000, Rivera presentó "Moción Informativa Urgente y en Solicitud de que se Dicte Resolución y Orden." En la misma, Rivera alegó que "la parte demandada ha iniciado un proceso de transferir las propiedades inmuebles de las corporaciones demandadas, a otras corporaciones o sociedades especiales no incluidas en la demanda, para así evitar que cualquier remedio de orden provisional que pueda emitir este Tribunal no afecte a las propiedades en las cuales el demandante reclama participación."
El 13 de noviembre de 2000, Rivera presentó Segunda Demanda Enmendada e incluyó a Figue Holdings y Jofi Investments como entidades jurídicas codemandadas. Rivera alegó que "las corporaciones y sociedades especiales co-demandadas Guaracanal, Fisan, Nashua, Jafim, Jofi y Figue son alter-egos del co-demandado Figueroa y las utiliza indistintamente como pantallas a su mejor conveniencia para realizar transacciones cuyo verdadero beneficiario es Figueroa, su esposa la co-demandada Gloria Santaella Parés y la sociedad legal de gananciales constituida entre ambos" y que "el esquema de fusión de corporaciones, agrupación de fincas y posteriormente venta de fincas segregadas lo ha efectuado Figueroa con el único propósito de transferir las fincas de su propietario anterior Guaracanal y Fisan a Jofi, entidad que aún no había sido demandada. ”
*825 También, Rivera alegó que "con tal actuación, Figueroa hábilmente le transfería el dominio de las fincas en que el demandante Rivera reclama participación, a entidades jurídicas no demandqdas para, así excluirlas del pleito y eventualmente defraudar a Rivera, como lo ha hecho hasta el presente." Por lo tanto, Rivera solicitó al Tribunal de Primera Instancia que descorriera el velo corporativo de las corporaciones alterego de Figueroa, que ordenara a Figueroa liquidar la participación reclamada por Rivera y que ordenara la anulación de las transacciones de bienes inmuebles realizadas entre Figueroa y las entidades jurídicas demandadas.
El 3 de diciembre de 2000, el Tribunal de Primera Instancia celebró vista sobre el estado procesal del caso, y el 4 de diciembre de 2000, Rivera presentó Tercera Demanda Enmendada. En la misma. Rivera incluyó entrie sus alegaciones dos fincas que pertenecían a Fisan o a Guaracanal Development y que fueron transferidas a. Figue Holdings como parte de la fusión corporativa efectuada.
El 6 de diciembre de 2000, Figueroa solicitó al Tribunal de Primera Instancia término adicional pata contestar la segunda y tercera demanda enmendada, y el 7 de diciembre de 2000, Figueroa Sgntaellq, Fisan, Guaracanal Development, Estancias de Bairoa, Turabo Management; Nashua Realty y Jafim Management solicitaron al Tribunal de Primera Instancia término adicional para contestar las demandas enmendadas.
Así las cosas, el 8 de diciembre de 2000, el Tribunal de Primera Instancia emitió Resolución y Orden y concedió a Rivera el remedio provisional solicitado. Mediante la referida orden, el Tribunal de Primera Instancia ordenó la anotación de un aviso de pleito pendiente sobre una finca de Jofi Investments y eximió a Rivera de presentar la correspondiente fianza.
Luego de varios incidentes procesales, el 24 y 25 de enero de 2001, el Tribunal de Primera Instancia celebró vista sobre remedios provisionales. De la minuta de dicha vista, la cual fue notificada el 20 de febrero de 2QQ1, surge que el Tribunal de Primera Instancia ordenó que el aviso de pleito pendiente sobre la propiedad de Jofi Investments continuara vigente hasta el 12 de marzo de 2001, fecha en la que dicho tribunal continuaría la vista sobre remedios provisionales, y que Figueroa no podría realizar transacciones de cualquier tipo sobre los inmuebles de las entidades jurídicas demandadas sin antes notificar al Tribunal de Primera Instancia con cinco días laborables de anticipación.
El 3 de febrero de 2001, Jofi Investments y Figue Holdings contestaron la tercera demanda enmendada y alegaron que Rivera carecía de una causa de acción contra ellas, que Rivera había actuado de mala fe, que Rivera no tenía las manos limpias y que Rivera nunca había sido accionista o socio de ellas. Además, Jofi Investments y Figue Holdings presentaron Reconvención contra Rivera por embargo ilegal e interferencia contractual y solicitaron al Tribunal de Primera Instancia que ordenara a Rivera pagar varias sumas por concepto de daños y pefiuicios, gastos, costas y honorarios de abogado.
El 9 de febrero de 2001, Figueroa Santaella, Estancias de Bairoa, Turabo Management, Nashua Realty y Jafim Management contestaron la tercera demanda enmendada y alegaron que la misma era totalícente fnyola y que Rivera nunca había sido socio o accionista, ni había tenido interés o participación propietaria alguna en dichas corporaciones y sociedades especiales.
El 12 de febrero de 2001, Figueroa contestó la tercera demanda enmendada y presentó reconvención confie Rivera. En la referida contestación, Figueroa alegó que la demanda no exponía heclios que justificaran la concesión de un remedio y que "no procede, en derecho, reclamarle a un accionista de una corporación por actuaciones llevadas a cabo en su capacidad como tal accionista sin antes haber obtenido sentencio contra lo corporación y haber hecho excusión de bienes corporativos." En la reconvención, Figueroa alegó que '’ese ejercicio del derecho de embargo por parte del demandante, es ilegítimo, por cuanto se excede manifiestamente de los límites impuestos por la buena fe o por elfin social y económico de ese derecho."
El 1 de marzo de 2001, Figueroa, Figueroa Santaella, Estancias de Bairp.a, Turabo Management, Nashua *826 Realty, Jafim Management, Figue Holdings y Jofi Investments presentaron "Solicitud de Inhibición o, en la Alternativa, Recusación" y alegaron que la Honorable Jueza que presidía el caso demostraba prejuicio y parcialidad contra los codemandados y que ésta había prejuzgado el caso. El 2 de marzo de 2001, Rivera contestó las reconvenciones de Jofi Investments, Figue Holdings y Figueroa y alegó que éstos habían actuado de mala fe, que éstos no tenían las manos limpias y que "Jofi, Figue y Figueroa Morales son la misma persona, siendo las primeras dos pantallas para encubrir los actos fraudulentos del tercero."
El 7 de marzo de 2001, todos los co-demandados presentaron Moción Urgente para Diferir Vista y solicitaron al tribunal de instancia que la vista sobre remedios provisionales pautada para el 12 de marzo de 2001 fuera diferida hasta que el Juez designado para resolver la solicitud de recusación tomara acción sobre la misma. El 9 de marzo de 2001, el Tribunal de Primera Instancia emitió la siguiente Orden:
"Se toma como Solicitud de Recusación y se refiere con carácter urgente a la Hon. Jueza Administradora de Asuntos de lo Civil. Dado que hay unos remedios provisionales expedidos basta el lunes próximo, se prorrogan los mismos hasta que el Hon. Juez Administrador, o la persona (magistrado) designado(a), resuelva esta solicitud y se efectúe la próxima vista en este caso."
Así las cosas, el 23 de marzo de 2001, Figueroa, Estancias de Bairoa, Turabo Management, Jofi Investments, Figue Holdings, Nashua Realty y Jafim Management comparecieron ante nos mediante la Petición de Certiorari de epígrafe y solicitaron la revocación de la orden de anotación de pleito pendiente sobre el inmueble de Jofi Investments y de la orden que prohibió a Figueroa realizar transacciones de cualquier tipo sobre los inmuebles de las entidades jurídicas demandadas sin antes notificar al Tribunal de Primera Instancia con cinco días laborables de anticipación.
En su petición de certiorari, Figueroa, Estancias de Bairoa, Turabo Management, Jofi Invesnents, Figue Holdings, Nashua Realty y Jafim Management alegaron que el Tribunal de Primera Instancia erró al emitir las órdenes recurridas sin concederles a ellos la oportunidad real de ser oídos y sin exigirle a Rivera la prestación de una fianza. Además, ellos alegaron que "una orden de embargo en aseguramiento de sentencia ex parte, sin vista y sin una demostración ("showing") de circunstancias extraordinarias, no cumple con los requisitos mínimos del debido proceso de ley" y que "la dispensa al demandante del requisito de prestación de fianza constituyó un claro abuso de discreción por parte del tribunal de instancia, dado el hecho de que no sólo no existe documento del cual se desprenda que la reclamación del demandante contra Jofi y los demás Peticionarios es legalmente exigible, sino que además se permite al demandante embargar bienes por valor en exceso de $7,000,000 sin garantía alguna para responder por los daños que dicho embargo ilegal pueda causar a los Peticionarios."
El 2 de abril de 2001 Rivera presentó su Oposición a la petición de certiorari de epígrafe y solicitó la confirmación de las órdenes recurridas. En dicha oposición, Rivera alegó que "mientras por un lado se discutía una solicitud de remedio provisional, los demandados enajenaron los bienes que la solicitud de remedio buscaba proteger" y que "los accionistas y oficiales de las peticionarias son los accionistas y oficiales de las demandadas, alter egos de los demandados originales, quienes están avisados de la solicitud del demandante y han tenido amplia oportunidad de expresarse sobre ésta desde hace mucho". Rivera también alegó que el Tribunal de Primera Instancia había respetado el derecho a ser oído de los peticionarios porque "este derecho tiene varios elementos y puede que el peticionario no haya tenido oportunidad de desfilar su prueba, pero han contrainterrogado, objetado y aceptado hechos."
Por último, el 1 de mayo de 2001, Figueroa, Estancias de Bairoa, Turabo Management, Jofi Investments, Figue Holdings, Nahua Realty y Jafim Management presentaron Réplica a la oposición de Rivera y alegaron que Rivera venía obligado a prestar fianza porque la obligación reclamada por él no era líquida, vencida y exigible y que "el tribunal de instancia sencillamente privó a Jofi y a los demandados recurridos de su derecho a un debido proceso de ley al ordenar el aseguramiento de sentencia sin dar a éstos, particularmente a Jofi que es la titular del inmueble sobre el cual ordenó la anotación de aviso de pleito pendiente, la oportunidad de ser *827 oídos, al tiempo que eximió al demandante del requisito de prestación de fianza".
Al estar perfeccionado el recurso ante nuestra consideración, procedemos a resolver.
n
Las Reglas de Procedimiento Civil, 32 L.P.R.A. Apéndice m, autorizan a un tribunal a emitir cualquier orden provisional que sea necesaria para asegurar la efectividad de una sentencia siempre que los intereses de todas las partes sean considerados. Específicamente, la Regla 56.4 de Procedimiento Civil, supra, permite que los tribunales expidan una orden de embargo o prohibición de enajenar para asegurar la efectividad de una sentencia.
Mediante el embargo preventivo, un bien específico queda afectado a un proceso judicial hasta tanto dicho proceso sea resuelto. La finalidad del embargo preventivo es evitar que el demandado distraiga u oculte sus bienes, o la cosa solicitada, con el propósito de burlar los derechos y reclamos de su acreedor. Vda. de Galindo v. Cano, 108 D.P.R. 277, 280-281 (1979). Sin embargo, salvo contadas excepciones, antes de emitir tíña orden de embargo preventivo, los tribunales requieren que el demandante preste fianza para responder por los daños y perjuicios que el demandado pueda sufrir como consecuencia del referido embargo, Regla 56.3 de Procedimiento Civil, supra. Rivera Rodríguez & Co. v. Lee Stowell, 133 D.P.R. 881, 396-397 (1993); Soc. de Gananciales v. Rodríguez, 116 D.P.R. 468, 471 (1985); M. Quilichini Sucrs., Inc. v. Villa Inv. Corp.; 112 D.P. R. 322, 324-325 (1982); Blatt & Udell v. Core Cell, 110 D.P.R. 142, 146 (1980); Vda. de Galindo v. Cano, supra, página 282.
Al fijar el monto de la fianza a ser prestada por el demandante-embargante, los tribunales deben considerar varios factores. Entre dichos factores, los tribunales deben considerar lo siguiente: (a) la utilidad que el bien a ser embargado sirve al demandado; (b) la solidez de los fundamentos que prima facie sostienen la reclamación del demandante; (c) si el aseguramiento solicitado es el menos oneroso para garantizar la efectividad de la sentencia que pueda, recaer; y (d) que la cuantía de la fianza no sea tan prohibitiva que frustre el propósito del demandante de asegurar la efectividad de la sentencia que en su día pueda recaer. Soc. de Gananciales V. Rodríguez, supra, páginas 471-473; Vda. de Galindo v. Cano, supra, página 282.
El embargo de un bien mueble causa más daño que el anotar un embargo sobre un bien inmueble en el Registro de la Propiedad porque la posesión de un bien mueble tiene para un litigante una utilidad inmediata de tipo económico. Además, el embargo de un bien inmueble no priva a su dueño de la posesión del mismo y, a menos que el embargo sea con prohibición de enajenar, el dueño no queda afectado de inmediato en relación con cualquier posible negociación a base de dicho inmueble. Soc. de Gananciales v. Rodríguez, supra, páginas 472-473.
Como norma general, antes de ordenar un embargo preventivo, los tribunales deben notificar a la parte adversa y celebrar una vista previa. Si el reclamante presta una fianza suficiente para responder por todos los daños y perjuicios que puedan ser ocasionados por dicho embargo, los tribunales pueden expedir una orden de embargo ex-parte. No obstante, aun cuando el reclamante preste una fianza, los tribunales deben celebrar una vista adversativa antes de ordenar el embargo, a menos que el reclamante alegue tener un previo interés propietario sobre la cosa embargada, que el reclamante alegue la existencia de circunstancias extraordinarias o que el reclamante alegue la probabilidad de prevalecer mediante prueba documental fehaciente de la cual pueda ser deducida que la deuda es líquida, vencida y exigible, Reglas 56.3 y 56.4 de Procedimiento Civil, supra; Ramos de Szendrey v. Colón Figuroa,_D.P.R._(2001), 2001 J.T.S. 33, página 957; Rivera Rodríguez & Co. v. Lee Stowell, supra, páginas 899-900.
m
De la aplicación de las normas que anteceden, surge que, tal como alegado por Figueroa, Estancias de Bairoa, Turabo Management, Jofi Investments, Figue Holdings, Nashua Realty y Jafim Management el *828 Tribunal de Primera Instancia erró al emitir las órdenes recurridas.
Si bien es cierto que antes de emitir dichas órdenes el Tribunal de Primera Instancia celebró varias vistas sobre remedios provisionales, también es cierto que, en ninguna de ellas, los co-demandados pudieron presentar prueba a su favor. Además, las órdenes recurridas fueron emitidas sin que Rivera presentara una fianza que respondiera por los daños y perjuicios que las mismas pudieran causar.
Este Tribunal reconoce que, bajo ciertas circunstancias, los tribunales de instancia pueden emitir órdenes de embargo o de prohibición de enajenar sin la celebración de una vista previa. No obstante, en el presente caso, el Tribunal de Primera Instancia no podía emitir las órdenes recurridas ex-parte porque la deuda reclamada por Rivera no era líquida, cierta, ni determinada y porque no exitían circunstancias extraordinarias que justificaran el negarle a los co-demandados su derecho a un debido proceso de ley, el cual es un derecho de rango constitucional.
Los intereses propietarios de Figueroa, Estancias de Bairoa, Turabo Management, Jofi Investments, Figue Holdings, Nashua Realty y Jafim Management quedaron afectados sin que su derecho a un debido proceso de ley fuera salvaguardado. Por lo tanto, resolvemos que el Tribunal de Primera Instancia erró al emitir las órdenes recurridas ex-parte y sin que Rivera presentara la correspondiente fianza. En consecuencia, procede devolver el caso al Tribunal de Primera Instancia para que en el término de 10 días celebre una vista sobre remedios provisionales en la cual los co-demandados puedan presentar prueba a su favor.
IV
En virtud de los fundamentos anteriormente expuestos, EXPEDIMOS la Petición de Certiorari solicitada, REVOCAMOS las Ordenes recurridas y DEVOLVEMOS el caso al Tribunal de Primera Instancia, Sala Superior de San Juan, para que actúe conforme lo aquí dispuesto.
Lo acordó y manda el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General