Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL XII

| | | |
|---|---|---|
| OFICINA INDEPENDIENTE DE PROTECCIÓN AL CONSUMIDOR EN REPRESENTACIÓN DE JU-JUTSU SELF DEFENSE P.R., INC.<br><br>Recurrente<br><br>v.<br><br>LUMA ENERGY, LLC Y LUMA ENERGY SERVCO, LLC<br><br>Recurridos | KLRA202400592 | *Revisión Administrativa* Procedente del Negociado de Energía de Puerto Rico<br><br>Caso Núm.: NEPR-QR-2023-0154<br><br>Sobre:<br><br>Revisión de Facturas |

Panel integrado por su presidenta, la Jueza Grana Martínez, el Juez Candelaria Rosa, la Jueza Rivera Pérez y la Jueza Díaz Rivera.

**Rivera Pérez, Jueza Ponente.**

### SENTENCIA

En San Juan, Puerto Rico, a 20 de diciembre de 2024.

Comparece ante nosotros la Oficina Independiente de Protección al Consumidor ("OIPC"), en representación de Ju-Jutsu Self Defense PR, Inc. (en lo sucesivo, "Ju-Jutsu"), solicitando la revisión de la *Resolución Final y Orden* emitida el 22 de agosto de 2024 y notificada el 26 de agosto de 2024 por el Negociado de Energía de Puerto Rico de la Junta Reglamentadora de Servicio Público de Puerto Rico ("NEPR").

Por los fundamentos que expondremos, resolvemos revocar la *Resolución Final y Orden* recurrida.

### I

En este caso, el 30 de marzo de 2023, LUMA Energy, LLC (en lo sucesivo, "LUMA") notificó a Ju-Jutsu un ajuste de las facturas de servicio eléctrico de la cuenta comercial Núm. 2504935073 para los periodos comprendidos entre el 14 de octubre de 2019 al 4 de

Número Identificador

SEN 2024_____

marzo de 2023.[1] Según surge, las facturas de estos periodos fueron emitidas a base de estimados, por lo que fueron refacturadas. Como resultado, LUMA reclamó cargos retroactivos, por un total de $31,937.54.

El 2 de mayo de 2023, Ju-Jutsu presentó una solicitud de objeción de factura impugnando la refacturación y los cargos en la factura.[2] Esta solicitud, fue registrada bajo Objeción Núm. OB20230502Emw (en lo sucesivo, "Primera Objeción").

Posteriormente, el 11 de mayo de 2023, LUMA notificó a Ju-Jutsu una corrección en la cuenta por motivos de "un error de cómputo y/o estimados en una factura anterior".[3] Como resultado, LUMA informó que Ju-Jutsu estaría recibiendo una factura con la cantidad corregida que se reflejaría como un crédito por el total de $12,479.49. En la carta, se adjuntó una tabla con los detalles de la corrección. Finalmente, se advirtió lo siguiente:

> "[...] Estamos en la mejor disposición de ofrecerle un plan de pago.
>
> Para más información o solicitar plan de pago puede llamar a nuestro Centro de Servicio al Cliente al 1-844-888-LUMA (5862) o visitar cualquiera de nuestras oficinas de servicios.
>
> Por disposición de la Ley 57 del 22 mayo de 2014, según enmendada, usted tiene un derecho a solicitar una objeción de factura con la corrección antes descrita. Una vez reciba su factura puede presentar la solicitud de objeción o investigación en cualquiera de las siguientes maneras:
>
> - Personalmente en la oficina de servicio a la cliente más cercana.
> - A través de Mi Luma en la página web: www.lumapr.com
> - A través de la aplicación Mi LUMA
> - Por teléfono: 1-844-888-LUMA (5862).
> - Por correo postal: PO Box 9100, San Juan, PR 00908-9100."

---

[1] Véase, Apéndice del recurso de revisión, págs. 15-58.
[2] Véase, Apéndice del recurso de revisión, pág. 77.
[3] Véase, Apéndice del recurso de revisión, págs. 59-60.

Por otra parte, en respuesta a la Primera Objeción, el 23 de mayo de 2023, LUMA notificó a Ju-Jutsu que se había realizado una investigación sobre la cuenta por motivo de la Primera Objeción[4] y, como resultado, se determinó que dicha cuenta debía ser refacturada. El 30 de marzo de 2023, se refacturaron varios periodos comprendidos entre el 3 de enero de 2019 al 4 de enero de 2023, utilizando lecturas regulares del sistema correspondientes. Finalmente, se determinó que el balance de la cuenta era de $20,572.15.

El 8 de junio de 2024, LUMA expidió una factura por el consumo de energía eléctrica para el periodo del 7 de mayo de 2023 al 8 de junio de 2023, por el total de $861.65.[5] En esta factura, se incluyó el desglose siguiente:

| DETALLE DE LA CUENTA | |
| --- | --- |
| **Balance** *Pague Inmediatamente* | **$32,723.41** |
| *Cantidad Adeudada del periodo anterior* | *$32,723.41* |
| Pagos acreditados | $0.00 |
| **Cargos corrientes** | **$861.65** |
| **Corrección de factura** | **-$12,479.49** |
| **Cargo por Atraso** | **$119.08** |
| **Cargo por Atraso** | **$209.15** |
| **Cantidad Total Adeudada** | **$21,433.80** |

El 12 de junio de 2023, Ju-Jutsu presentó otra solicitud de objeción de factura a través del portal cibernético de LUMA. Esta solicitud, fue registrada bajo Objeción Núm. OB20230612250180218109 (en lo sucesivo, "Segunda Objeción").

Al día siguiente, LUMA notificó a Ju-Jutsu que esta Segunda Objeción no podía ser procesada.[6] Al respecto, en la notificación, se indicó lo siguiente:

"Hemos recibido su solicitud de reclamación por concepto de **Cargos por pago tardío** para la factura de 06-8-2023.

---

[4] Véase, Apéndice del recurso de revisión, pág. 61.
[5] Véase, Apéndice del recurso de revisión, págs. 62-68.
[6] Véase, Apéndice del recurso de revisión, pág. 79.

La misma no cumple con el o los siguientes requisitos según el artículo 4.07 del Reglamento del Negociado de Energía:

X No procede ya que la factura que reclama no es la misma a la que hace referencia.

X No procede ya que la factura a la que hace referencia está fuera de término.

X No procede, objeción duplicada ya se está trabajando una con el Número de Objeción 0Bxxxxx.

X Otros, El pago de $907.14 está reflejado en sistema el 2 de mayo de 2023. Sin embargo, con relación a la refacturación en la objeción 0B20230502EmwV fue notificado sobre la determinación de esta. Adicional en cuentas comerciales no aplica La Ley 272.

Por tal motivo su reclamación no podrá ser procesada.

Si tiene alguna duda sobre el balance y los pagos realizados en su cuenta pueden visitar una oficina de Servicio al Cliente o llamar 1-844-888-5862.

**Luma Energy**
**OBJETAR FACTURA**
**PO BOX 9100**
**SAN JUAN, PR 00908**
objecionalafactura@lumapr.com.”

El 6 de septiembre de 2023, la OIPC, en representación de Ju-Jutsu, presentó ante el NEPR una *Querella* contra LUMA, la cual fue registrada bajo Querella Núm. NEPR-QR-2023-0154.[7] En dicha querella, la OIPC alegó que LUMA no inició una investigación o notificó defectos en relación con la Segunda Objeción dentro del término de treinta (30) días a partir de la fecha de presentación. Por lo tanto, de acuerdo con el Artículo 6.27(3) de la Ley Núm. 57-2014, *infra*, y la Sección 4.10 del Reglamento Núm. 8863, *infra*, la objeción debía ser adjudicada a favor del cliente Ju-Jutsu.

El 24 de octubre de 2023, LUMA presentó una *Contestación a Querella*,[8] en la que negó las alegaciones en su contra y levantó varias defensas afirmativas. En lo pertinente, LUMA alegó que los periodos corregidos en la factura del 8 de junio de 2023 se

---

[7] Véase, Apéndice del recurso de revisión, págs. 1-14 y 15-69.
[8] Véase, Apéndice del recurso de revisión, págs. 70-79.

encontraban dentro del mismo marco que los periodos corregidos en la factura del 30 de marzo de 2023. Además, alegó que Ju-Jutsu no solicitó reconsideración de la carta fechada de 23 de mayo de 2023, mediante la cual se notificó el resultado de la investigación que se realizó con relación a la Primera Objeción, ni de la carta del 13 de junio de 2023, mediante la cual se notificó que la Segunda Objeción no podía ser procesada, por lo que no tenía jurisdicción para atender estos asuntos.

Luego de varios trámites procesales, el 14 de febrero de 2024, se celebró la *Vista Administrativa* ante el NEPR y, el 22 de agosto de 2024, notificada el 26 de agosto de 2024, el NEPR emitió una *Resolución Final y Orden.*[9]

---

[9] Véase, Apéndice del recurso de revisión, págs. 80-86. En dicho dictamen, el NEPR concluyó y resolvió lo siguiente:

"1. <u>Primera Objeción (factura expedida el 30 de marzo de 2023)</u>

Con relación a la primera objeción, el Negociado de Energía carece de jurisdicción para adentrarse en sus méritos, toda vez que la Querellante **no solicitó reconsideración** del resultado de la investigación y, por tanto, no agotó remedios administrativos previo a acudir ante este foro a solicitar la revisión de los mismos.

2. <u>Segunda Objeción (factura expedida el 8 de junio de 2023)</u>

Según mencionamos anteriormente, el 8 de junio de 2023, LUMA **facturó por el servicio eléctrico para el periodo de 7 de mayo de 2023 al 8 de junio de 2023.** También hizo un desglose sobre cargos que fueron objeto de la primera objeción de factura. En desacuerdo, la Querellante objetó dicha factura.

LUMA determinó no atenderla por tratarse de cargos relacionados a la primera objeción y/o una objeción duplicada. Coincidimos con LUMA en cuanto a que los cargos impugnados mediante la primera objeción no eran revisables nuevamente. En ese sentido, no erró LUMA al hacer caso omiso y/o tratar la objeción respecto a los cargos objetados por segunda vez como si nunca hubiera sido presentada.

Sin embargo, LUMA no atendió ni se expresó en torno a los cargos objetados para el periodo **de 7 de mayo de 2023 al 8 de junio de 2023.** Aunque los cargos correspondientes a la primera objeción no eran revisables, el periodo de referencia que no fue parte de la primera objeción de factura, podía serlo.

Por consiguiente, en cuanto a la segunda objeción, consideramos **necesario obtener una respuesta de la parte Querellante** sobre si interesa formular una objeción de factura en cuanto al periodo de **7 de mayo de 2023 al 8 de junio de 2023**, a los fines de que no quede desprovista de su derecho a objetarla y/o un posible reclamo válido se quede sin atender.

**II. Conclusión**
El Negociado de Energía **DETERMINA** que carece de jurisdicción para adentrarse en los méritos de la objeción de factura de 30 de marzo de 2023, no habiéndose agotado remedios administrativos.

El 15 de agosto de 2024, la OIPC, en representación de Ju-Jutsu, presentó una *Solicitud de Notificación Adecuada*. En su solicitud, alegó que, en la *Resolución Final y Orden emitida* por el NEPR, no se advirtió sobre el derecho a solicitar reconsideración y revisión judicial. En atención a esta solicitud, el 26 de agosto de 2024, el NEPR notificó nuevamente su *Resolución Final y Orden*.[10] En dicho dictamen, el NEPR concluyó y resolvió lo siguiente:

> "1. Primera Objeción (factura expedida el 30 de marzo de 2023)
>
> Con relación a la primera objeción, el Negociado de Energía carece de jurisdicción para adentrarse en sus méritos, toda vez que la Querellante **no solicitó reconsideración** del resultado de la investigación y, por tanto, no agotó remedios administrativos previo a acudir ante este foro a solicitar la revisión de los mismos.
>
> 2. Segunda Objeción (factura expedida el 8 de junio de 2023)
>
> Según mencionamos anteriormente, el 8 de junio de 2023, LUMA facturó por el servicio eléctrico para el periodo **de 7 de mayo de 2023 al 8 de junio de 2023.** También hizo un desglose sobre cargos que fueron objeto de la primera objeción de factura. En desacuerdo, la Querellante objetó dicha factura.
>
> LUMA determinó no atenderla por tratarse de cargos relacionados a la primera objeción y/o una objeción duplicada. Coincidimos con LUMA en cuanto a que los cargos impugnados mediante la primera objeción no eran revisables nuevamente. En ese sentido, no erró LUMA al hacer caso omiso y/o tratar la objeción respecto a los cargos objetados por segunda vez como si nunca hubiera sido presentada.
>
> Sin embargo, LUMA no atendió ni se expresó en torno a los cargos objetados para el periodo **de 7 de mayo de 2023 al 8 de junio de 2023.** Aunque los cargos

---

En cuanto a la factura expedida el 8 de junio de 2023, el Negociado de Energía **CONCEDE** a la Querellante un plazo de **diez (10) días**, contados a partir de la notificación de la presente Resolución y Orden, para manifestar si tiene interés en objetar los cargos para el periodo de 7 de mayo de 2023 al 8 de junio de 2023. Si la Querellante expresa que interesa objetarlos, el Negociado de Energía devolverá el caso a LUMA, a los fines de que proceda con el procedimiento administrativo informal para la objeción de facturas, circunscribiéndose al periodo de facturación antes mencionado. Se **ADVIERTE que, en caso de no recibir respuesta de la Querellante dentro del plazo provisto, el Negociado de Energía entenderá que la Querellante renuncia a su derecho de objetar la factura de 8 de junio de 2023 y procederá con la desestimación de la Querella y el cierre y archivo de la misma."**

[10] Véase, Apéndice del recurso de revisión, págs. 87-94.

correspondientes a la primera objeción no eran revisables, el periodo de referencia que no fue parte de la primera objeción de factura, podía serlo.

Por tal razón, en cuanto a la *segunda objeción*, previo a emitir su Resolución Final y Orden y proceder con el cierre y archivo del caso, el Negociado de Energía concedió a la parte querellante la oportunidad de expresarse en torno a si interesaba formular una objeción de factura en cuanto al periodo **de 7 de mayo de 2023 al 8 de junio de 2023**, a los fines de que no quedara desprovista de su derecho a objetarla y/o un posible reclamo válido se quedara sin atender.

Mediante la Moción de 15 de agosto, la parte querellante se limitó a argumentar que la Resolución de 5 de agosto debió incluir las advertencias legales correspondientes sobre su derecho a reconsiderar y/o presentar un recurso de revisión, por lo que solicitó que tales advertencias fueran incluidas. **La parte querellante no se expresó en torno a si interesaba objetar la factura de 8 de junio de 2023, lo que constituye, según apercibida, una renuncia a su derecho de objetarla.**

El Negociado de Energía aclara a la parte querellante que la Resolución de 5 agosto no fue una determinación final, sino una orden, previo a emitir el dictamen final, a los fines de que se expresara en torno a si tenía interés en objetar los cargos para el periodo de 7 de mayo de 2023 al 8 de junio de 2023, razón por la cual no recogió en su dictamen las advertencias correspondientes. Así las cosas, habiendo renunciado la parte querellante a dicho derecho, el Negociado de Energía emite mediante la presente Resolución Final y Orden su determinación final, la cual incluye las advertencias legales correspondientes.

III. Conclusión
El Negociado de Energía **DETERMINA** que carece de jurisdicción para adentrarse en los méritos de la objeción de factura de 30 de marzo de 2023, no habiéndose agotado remedios administrativos. Por otro lado, la parte Querellante renunció a su derecho de objetar la factura de 8 de junio de 2023 ante LUMA. Como resultado, el Negociado de Energía **ORDENA** el cierre y archivo de la Querella de epígrafe.

[…].”

El 16 de septiembre de 2024, la OIPC, en representación de Ju-Jutsu, presentó una *Moción en Solicitud de Reconsideración*,[11] la cual fue denegada por el NEPR mediante la *Resolución* emitida el 19 de septiembre de 2024.

---

[11] Véase, Apéndice del recurso de revisión, págs. 95-116.

En desacuerdo con esta determinación, la OIPC, en representación de Ju-Jutsu, acudió ante nosotros el 21 de octubre de 2024 mediante el presente *Recurso de Revisión Judicial*. En su escrito, señalan los errores siguientes:

> Erró el Negociado de Energía al concluir que los cargos identificados en la factura del 8 de junio de 2023, como "Corrección de Factura" no eran revisables mediante objeción por estar relacionados a la factura del 30 de marzo de 2023, previamente objetada.

> Erró el Negociado de Energía al no determinar que LUMA perdió jurisdicción sobre la objeción de la factura del 8 de junio de 2023, al incumplir con los términos establecidos en la Ley 57-2014 y el Reglamento 8863, supra, para el inicio de la investigación y su correspondiente resolución.

> Erró el Negociado de Energía al ordenar el cierre y archivo de la Querella NEPR-QR-2013-0154 sin sostener su determinación en base legal alguna.

Luego de varios trámites procesales, el 1 de noviembre de 2024, emitimos *Resolución* concediéndole hasta el 15 de noviembre de 2024 a la parte recurrida para presentar su posición respecto al recurso y para presentar copia certificada del expediente administrativo. En cumplimiento con lo ordenado, el 15 de noviembre de 2024 la parte recurrida presentó su *Alegato de la Parte Recurrida*.

Contando con el beneficio de la comparecencia de las partes, así como el expediente administrativo del caso, procedemos a resolver.

**II**

**A.**

La Ley Núm. 57-2014, según enmendada, conocida como *"Ley de Transformación y ALIVIO Energético"*, 22 LPRA sec. 1051 *et seq.*, se aprobó con el fin de transformar y reestructurar el sector eléctrico. Véase, *Exposición de Motivos* de la Ley Núm. 57-2014, *supra.* Como parte de dicho proceso, se creó el Negociado de Energía como ente independiente especializado encargado de reglamentar,

supervisar y hacer cumplir la política pública energética del Estado Libre Asociado de Puerto Rico. *Íd.* Véase, además, Artículo 6.3 de la Ley Núm. 57-2014, *supra.* El Negociado de Energía tiene jurisdicción primaria exclusiva sobre, entre otros asuntos, "los casos y controversias relacionadas con la revisión de facturación de las compañías de energía a sus clientes por los servicios de energía eléctrica." Artículo 6.4 de la Ley Núm. 57-2014, *supra.*

En cuanto al proceso de revisión de facturas sobre el servicio eléctrico, el Artículo 6.27 de la Ley Núm. 57-2014, *supra,* establece lo siguiente:

"(a) Antes de acudir al Negociado de Energía para solicitar una revisión de factura de servicio eléctrico, toda persona deberá agotar, ante la compañía de energía certificada que le cobró dicha factura, el procedimiento administrativo informal que se establece en este Artículo y en los reglamentos que adopte el Negociado de Energía. En este proceso administrativo informal no aplicarán las disposiciones del Capítulo III de la Ley 38-2017, según enmendada, conocida como la "Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico".

(1) Todo cliente podrá objetar o impugnar cualquier cargo, clasificación errónea de tipo de tarifa, cálculo matemático o ajuste de la factura de servicio eléctrico y solicitar una investigación por parte de la compañía de energía certificada dentro de un término de treinta (30) días a partir de la fecha en que dicha factura sea depositada en el correo postal o sea enviada al cliente vía correo electrónico. No obstante, lo anterior, ningún cliente podrá utilizar este procedimiento para objetar o impugnar la tarifa vigente o el Cargo de Transición por la estructura de titulización (*securitization*) facturado por la Autoridad. Para poder objetar la factura y solicitar la correspondiente investigación, la persona deberá pagar la cantidad correspondiente al promedio de las facturas no disputadas durante los últimos seis (6) meses. La compañía de energía certificada no vendrá obligada a iniciar la investigación hasta que la cantidad indicada haya sido pagada. Las entidades o instrumentalidades públicas, incluyendo los municipios, que deseen objetar su factura tendrán un término de cuarenta y cinco (45) días para plantear la objeción y solicitar la investigación de la compañía de servicio eléctrico.

(2) La persona podrá notificar su objeción y solicitud de investigación de su factura a la compañía de energía certificada mediante correo certificado, teléfono, fax o correo electrónico, siempre que dicha objeción y solicitud se someta a través de los contactos específicos

provistos para esos propósitos por la compañía de energía certificada y se pueda establecer con certeza la fecha del envío de la objeción y solicitud de investigación.

**(3) Una vez notificada la objeción y depositada la cantidad correspondiente, la compañía de energía certificada deberá iniciar la investigación o el proceso adjudicativo que proceda dentro del término de treinta (30) días, contados a partir de la fecha en que el cliente notificó su objeción. En caso de que la compañía de energía certificada no inicie el proceso dentro del término de treinta (30) días, la objeción será adjudicada a favor del cliente.** La compañía de energía certificada deberá concluir la investigación o proceso administrativo, emitir la correspondiente resolución e informar al cliente el resultado dentro de un término de sesenta (60) días contados a partir de la fecha de comienzo de la investigación o proceso adjudicativo. Si la compañía de energía certificada no emite la referida resolución o no informa al cliente de la misma dentro del término de sesenta (60) días, la objeción será adjudicada a favor del cliente. Al notificar el resultado de la investigación, la compañía de servicio eléctrico informará al cliente sobre su derecho a solicitar la reconsideración de dicho resultado y el término dentro del cual deberá solicitar la reconsideración.

(4) Si el cliente no está conforme con el resultado de la investigación de la compañía de servicio eléctrico, deberá solicitar por escrito a dicha compañía la reconsideración de esa decisión inicial por parte de un funcionario de mayor jerarquía. Toda solicitud de reconsideración deberá presentarse dentro del término de veinte (20) días contados a partir de la notificación de la decisión de la compañía de servicio eléctrico sobre el resultado de la investigación. El cliente podrá presentar y notificar su solicitud de reconsideración a la compañía de servicio eléctrico mediante correo certificado, fax o correo electrónico, siempre y cuando ésta se someta a través de los contactos específicos provistos por la compañía para estos propósitos.

(5) La compañía de energía certificada tendrá un término de treinta (30) días a partir de la presentación de la solicitud de reconsideración para evaluarla y notificar por escrito al solicitante su determinación final sobre el resultado de la investigación. Si la compañía de energía certificada no emite la referida notificación por escrito dentro del término de treinta (30) días, la objeción será adjudicada a favor del cliente. Toda determinación final deberá exponer claramente por escrito que el cliente tendrá derecho de presentar un recurso de revisión ante la Comisión y una breve descripción de cómo presentar tal recurso.

(b) Toda factura que una compañía de energía certificada envíe a sus clientes, deberá advertir de manera conspicua que todo cliente tiene un término de treinta (30) días para objetar la factura, pagar la

cantidad correspondiente al promedio de las facturas no disputadas de los últimos seis (6) meses y solicitar una investigación por parte de la compañía de servicio eléctrico, todo sin que su servicio quede afectado.

(c) La presentación de la objeción de una factura y las solicitudes de investigación a una compañía de energía certificada no eximirán a los clientes objetantes de su obligación de pagar las facturas futuras por los servicios eléctricos que esa compañía le provea.

(d) Al presentar su querella ante la Comisión el cliente querellante deberá demostrar que ha cumplido con los requisitos establecidos en este Artículo. De la misma manera, la compañía de servicio eléctrico querellada deberá establecer en su primera comparecencia ante la Comisión que han cumplido fielmente con los requisitos establecidos en este Artículo.

(e) La Comisión revisará de novo la decisión final de la compañía de energía certificada sobre la objeción y el resultado de la investigación.

(f) Si el cliente no efectúa el pago de la factura y no utiliza ni agota el procedimiento para objetar facturas, la compañía de energía certificada podrá suspender el servicio eléctrico de dicho cliente hasta que pague. Antes de suspender el servicio, la compañía de energía certificada deberá enviar al cliente un apercibimiento por escrito sobre la eventual suspensión. La compañía de energía certificada no podrá notificar dicho apercibimiento de suspensión antes de que transcurra el término de treinta (30) días que tiene el cliente para pagar u objetar y solicitar una investigación de la factura de cobro bajo el inciso (a)(1) de este Artículo.

(g) La compañía de energía certificada efectuará la suspensión del servicio luego de que haya transcurrido un término de diez (10) días a partir del envío del apercibimiento sobre la suspensión. La compañía de energía notificará al cliente cuarenta y ocho (48) horas antes de la suspensión del servicio, mediante mensaje automático generado vía llamada telefónica al número de contacto del cliente y mediante cualquier otro medio electrónico que obre en expediente del cliente en la compañía de energía. Para que tenga efecto esta disposición, será responsabilidad del cliente mantener actualizada su información de contacto. La suspensión del servicio nunca ocurrirá un viernes, sábado, domingo o día feriado, ni el día laborable anterior a este último. Si la compañía de energía incumple con este requisito, no podrá cobrar un cargo por reconexión." (énfasis suplido).

En virtud de los Artículos 6.3, 6.4 y 6.27 de la Ley Núm. 57-2014, *supra*, se adoptó el Reglamento sobre el Procedimiento para la Revisión de Facturas y Suspensión del Servicio Eléctrico por Falta de Pago, Reglamento Núm. 8863, Departamento de Estado, 1 de

diciembre de 2016. Este reglamento, establece las normas que rigen los mecanismos y procedimientos que las Compañías de Servicio Eléctrico deben poner a disposición de sus clientes a los fines de atender y resolver toda disputa que surja con relación a las facturas que estas emiten por concepto de consumo energético. Artículo 1.03 del Reglamento Núm. 8863, *supra*. De igual forma, el reglamento establece el procedimiento para la objeción de facturas ante las Compañías de Servicio Eléctrico que los clientes deben agotar antes de solicitar una revisión ante el Negociado de Energía y las normas generales para la suspensión del servicio eléctrico por falta de pago. *Íd*. La Sección 2.02 del Reglamento Núm. 8863, *supra*, establece que:

> "[t]odo cliente deberá agotar, ante la Compañía de Servicio Eléctrico, el Procedimiento Administrativo Informal de Objeción de Facturas establecidos en este Reglamento previo a solicitar una revisión formal de cualquier objeción por parte de la Comisión de Energía. Mediante este Procedimiento Administrativo Informal, el Cliente explicará los fundamentos de su objeción a la Compañía de Servicio Eléctrico e intentará alcanzar una solución al asunto directamente con la compañía."

A su vez, la Sección 4.13 del Reglamento Núm. 8863, *supra*, dispone lo siguiente:

> "Si el Cliente no está conforme con la decisión inicial de la objeción de factura y el resultado de la investigación de la Compañía de Servicio Eléctrico, podrá solicitar por escrito a dicha Compañía la reconsideración de la decisión inicial. La Compañía de Servicio Eléctrico remitirá toda solicitud de reconsideración a la atención de un funcionario de mayor jerarquía que aquél que haya realizado la investigación inicial.
>
> Toda solicitud de reconsideración deberá presentarse dentro del término de veinte (20) días contados a partir de la fecha de notificación de la decisión de la Compañía de Servicio Eléctrico sobre el resultado de la investigación. El Cliente podrá presentar su solicitud de reconsideración a la Compañía de Servicio Eléctrico mediante cualquiera de los métodos establecidos por la Compañía de Servicio Eléctrico para esos fines, los cuales podrán incluir correo certificado, fax o correo electrónico, entre otros."

En cuanto a la legitimación activa del Negociado de Energía de Puerto Rico, la Sección 5.01 del Reglamento Núm. 8863, *supra*, dispone los siguientes:

> "Todo Cliente que no esté conforme con la decisión final de la Compañía de Servicio Eléctrico referente a un querella o una objeción de Factura podrá iniciar un procedimiento formal de revisión ante la Comisión de Energía dentro del término de treinta (30) días, contados a partir de la fecha de notificación de la decisión final. Al presentar su solicitud de revisión, el querellante deberá demostrar que ha cumplido fielmente con los requisitos establecidos en el Artículo 6.27 de la Ley Núm. 57-2014 y en este Reglamento. [...]."

Por otra parte, y en lo pertinente al recurso ante nuestra consideración, la Sección 6 (1) (o) de la Núm. 83 de 2 de mayo de 1941 según enmendada, conocida como *"Ley de la Autoridad de Energía Eléctrica de Puerto Rico"*, 22 LPRA sec. 196, establece lo siguiente:

> "La Autoridad contará con un término máximo de ciento veinte (120) días a partir de la expedición de las facturas por concepto de consumo de energía eléctrica para notificar a los clientes de errores de cálculo de los cargos, incluyendo errores en cargos estimados. Una vez concluido dicho término, la Autoridad no podrá reclamar a ninguno de sus clientes, incluyendo residenciales, comerciales, industriales o cualquier otra clase de cliente, cargos retroactivos por concepto de errores en el cálculo de los cargos, tales como aquellos de índole administrativo, operacional o de la lectura errónea de los contadores de consumo de electricidad o errores de estimados de facturación a sus clientes [...]."

Originalmente, dicha sección no aplicaba a los clientes comerciales. No obstante, la Ley Núm. 36-2024 enmendó el inciso (o) de la Sección 6 de la Ley Núm. 83 de 2 de mayo de 1941, *supra*, para fortalecer la protección de los abonados de la Autoridad de Energía Eléctrica de Puerto Rico frente a ajustes retroactivos injustos u onerosos. Según su exposición de motivos, la enmienda tiene como objetivo evitar que cualquier cliente—sea residencial, comercial, industrial o institucional—sea sujeto a cobros retroactivos derivados de errores administrativos o de cálculo, especialmente cuando estos se notifican fuera del término de 120

días establecido. Este propósito se fundamenta en la necesidad de promover la eficiencia administrativa de la Autoridad y de garantizar justicia para los consumidores.

Aunque la Ley Núm. 272-2002, mediante la cual se enmendó el inciso (1) de la Sección 6 (a) de la Ley Núm. 83 de 2 de mayo de 1941, *supra*, ya limitaba el término de notificación a 120 días, esta aplicaba únicamente a clientes residenciales. La Ley Núm. 36-2024, *supra*, corrigió esta omisión al extender la protección a todos los tipos de abonados. Por lo tanto, cualquier ajuste notificado fuera de ese término es contrario a derecho y, en este caso, debe declararse nulo.

**B.**

La norma general que establece la no retroactividad de las leyes está consignada en el Artículo 9 del Código Civil de 2020, 31 LPRA sec. 5323, que dispone que "[l]a ley no tiene efecto retroactivo, excepto cuando se dispone expresamente lo contrario." Este precepto establece además que "[e]l efecto retroactivo de una ley, no puede perjudicar los derechos adquiridos al amparo de una ley anterior." *Íd.*

En cuanto al principio de la irretroactividad, se ha señalado que "es un postulado jurídico fundamental de interpretación estatutaria que sólo cede ante determinadas y supremas circunstancias que hayan sido establecidas de manera concreta por el legislador." *Ortiz Ortiz v. Medtronic*, 209 DPR 759, 777 (2022); *Nieves Cruz v. U.P.R.*, 151 DPR 150, 158 (2000).

Por ende, los casos en los que nos hemos alejado de la norma general de irretroactividad son pocos, "ya que la absoluta retroactividad de las leyes conlleva la muerte de la seguridad y de la confianza jurídica". *Asoc. Maestros v. Depto. Educación*, 171 DPR 640, 648 (2007).

Sin embargo, el Tribunal Supremo ha "reconocido que una ley

podrá tener efectos retroactivos cuando surja de la intención legislativa, ya sea de forma expresa o tácita, el deseo del legislador de brindarle tal efecto". *Rivera Padilla et al. v. OAT*, 189 DPR 315, 340 (2013). En ausencia de dicha intención, "entonces la ley aplicable al asunto es la que estaba vigente cuando ocurrieron los hechos que dan lugar a la causa de acción". *Nieves Cruz v. U.P.R.*, supra, pág. 159. Por consiguiente, "[l]a intención de la Asamblea Legislativa dándole efecto retroactivo a una ley debe aparecer claramente, pues es por excepción que un estatuto se aplica retroactivamente". *Ortiz Ortiz v. Medtronic*, supra, págs. 777-778, (citando a R.E. Bernier y J.A. Cuevas Segarra, *Aprobación e interpretación de las leyes en Puerto Rico*, 2da ed. rev., San Juan, Pubs. JTS, 1987, pág. 391).

Ahora bien, la regla de hermenéutica que desfavorece la retroactividad de las leyes no es absoluta. *Íd.*, pág. 778. Particularmente, este principio general "aplica solamente a disposiciones estatutarias de carácter sustantivo y no a aquellas de carácter procesal". *Íd.*, (citando a C*lase A, B y C v. PRTC*, 183 DPR 666, 680 (2011)). De ahí que "[l]a regla es a la inversa en las leyes procesales, que tienen efecto retroactivo y se aplican a los casos pendientes, a menos que la Asamblea Legislativa disponga lo contrario". *Íd.*, (citando a Bernier y Cuevas Segarra, *op. cit.*, pág. 400.

## C.

La Constitución del Estado Libre Asociado de Puerto Rico, al igual que las Enmiendas V y XIV de la Constitución de los Estados Unidos, garantizan que: "ninguna persona será privada de su libertad o propiedad sin un debido proceso de ley." Art. II, Sec. 7, Const. ELA, LPRA, Tomo 1; Emdas. V y XIV, Const. EE. UU., LPRA, Tomo 1. El debido proceso de ley se manifiesta en dos dimensiones distintas: sustantiva y procesal. Al amparo del debido proceso

sustantivo, los tribunales examinan la validez de una ley, a la luz de los preceptos constitucionales pertinentes, con el propósito de proteger los derechos fundamentales de las personas. Bajo este análisis, el Estado, al aprobar leyes o al realizar alguna actuación, no puede afectar de manera irrazonable, arbitraria o caprichosa los intereses de propiedad o libertad. *PVH Motor v. ASG*, 209 DPR 122 (2022); *Román Ortiz v. OGPe*, 203 DPR 947 (2020); *Rivera Rodríguez & Co. v. Lee Stowell, etc.,* 133 DPR 881 (1993); *Rodríguez Rodríguez v. E.L.A.,* 130 DPR 562 (1992); *Rivera Santiago v. Srio. de Hacienda,* 119 DPR 265 (1987). Por otro lado, en el debido proceso de ley procesal se le impone al Estado la obligación de garantizar que la interferencia con los intereses de libertad y propiedad del individuo se haga a través de un procedimiento que sea justo y equitativo. *Román Ortiz v. OGPe*, supra; *Rivera Rodríguez & Co. v. Lee Stowell, etc.,* supra; *López Vives v. Policía de Puerto Rico*, 118 DPR 219 (1987).

Para que entre en vigor la protección que ofrece este derecho, en su vertiente procesal, tiene que estar en juego un interés individual de libertad o propiedad. *Board of Regents v. Roth*, 408 US 564 (1972); *Rivera Santiago v. Srio. de Hacienda*, supra, pág. 274. Una vez cumplida esta exigencia, hay que determinar cuál es el procedimiento exigido. *Rivera Santiago v. Srio. de Hacienda,* supra, pág. 274; *Morissey v. Brewer*, 408 US 471, 481 (1982). Dependiendo de las circunstancias, diversas situaciones pueden requerir diferentes tipos de procedimientos, pero siempre persiste el requisito general de que el proceso gubernamental debe ser justo e imparcial. Véase: *Rivera Santiago v. Srio. de Hacienda,* supra, pág. 274.

La jurisprudencia ha establecido diversos requisitos que debe cumplir todo procedimiento adversativo, para satisfacer las exigencias del debido proceso, a saber: (1) notificación adecuada del proceso; (2) proceso ante un juez imparcial; (3) oportunidad de ser oído; (5) derecho a contrainterrogar testigos y examinar evidencia

presentada en su contra; (6) tener asistencia de abogado y (7) que la decisión se base en el expediente. *Román Ortiz v. OGPe,* supra; *Rivera Rodríguez & Co. v. Lee Stowell, etc.,* supra.

En *PVH Motor v. ASG,* supra, págs. 131, el Tribunal Supremo señaló que:

> "[d]ado que las agencias administrativas ejercen una función adjudicativa, al interferir no solo con los intereses de libertad, sino también con la propiedad de los individuos, las garantías de un debido proceso de ley han sido extendidas a dichas agencias. [...] No obstante, los procedimientos en el ámbito administrativo no tienen la misma rigidez que los procedimientos adjudicativos ante los tribunales. [...] Por tanto, el procedimiento adjudicativo ante las agencias debe ceñirse a las garantías mínimas del debido proceso de ley. [...]" (citas omitidas).

De igual manera, estas salvaguardas constitucionales se reconocen en la Carta de Derechos de la Sección 3.1 de la Ley Núm. 38-2017, *supra.*[12] Específicamente, esta Sección dispone que, en todo procedimiento adjudicativo formal ante una agencia se salvaguardarán los siguientes derechos: derecho a notificación oportuna de los cargos o querellas o reclamos en contra de una parte; derecho a presentar evidencia; derecho a una adjudicación imparcial, derecho a que la decisión sea basada en el expediente. Sección 3.1 de la Ley Núm. 38-2017, *supra.*

En lo pertinente al caso que nos ocupa, se reconoce que el derecho a cuestionar la adjudicación de una subasta mediante el proceso de revisión judicial es parte del debido proceso de ley. *St. James Sec. v. AEE,* 2023 TSPR 149, 213 DPR ___ (2023); *PVH Motor v. ASG,* supra, pág. 132; *PR Eco Park et al. v. Mun. de Yauco,* 202 DPR 525 (2019). Por tal razón, es indispensable que las notificaciones que se realicen durante estos procesos sean efectuadas correctamente a todas las partes. *Íd.*; *IM Winner, Inc. v.*

---

[12] La LPAU, es el cuerpo legal que "codifica las pautas mínimas que deben garantizar las agencias administrativas cobijadas por ese estatuto". *St. James Sec. v. AEE,* 2023 TSPR 149, 213 DPR ___ (2023), citando a *ACT v. PROSOL et als.,* 210 DPR 897, 907 (2022). Véase, *Fonte Elizondo v. F & R Const.,* 196 DPR 353, 358 (2016).

*Mun. de Guayanilla,* 151 DPR 30, 35 (2000). En específico, se debe advertir del derecho de las partes a procurar la revisión judicial; el término disponible para hacerlo, y la fecha del archivo en autos de una copia de la notificación. *Íd.*

Además, es necesario que la decisión de la agencia o el ente correspondiente esté fundamentada para que los tribunales apelativos podamos cumplir con nuestra función revisora. *L.P.C. & D., Inc. v. A.C.,* 149 DPR 869, 877-878 (1999). De esta manera, se asegura la efectividad del derecho a obtener una revisión judicial, cuyo propósito principal es delimitar la discreción de los organismos administrativos y cerciorarse de que estos desempeñen sus funciones conforme a la ley. *Íd.* Del mismo modo, la parte adversamente afectada por la determinación de una agencia debe conocer los motivos que cimentan el proceder de la decisión administrativa. De lo contrario, el trámite de revisión judicial se convertiría en un ejercicio fútil. *Íd.,* pág. 878.

Al respecto, en *L.P.C. & D., Inc. v. A.C.,* supra, se señaló el mínimo de información que las agencias de gobierno deberán incluir en las notificaciones de las adjudicaciones de las subastas para cumplir con el debido proceso de ley, a saber: (1) los nombres de los licitadores en la subasta y una síntesis de sus propuestas; (2) los factores o criterios que se tomaron en cuenta para adjudicar la subasta; (3) los defectos, si alguno, que tuvieran las propuestas de los licitadores perdidosos, y (4) la disponibilidad y el plazo para solicitar la reconsideración y la revisión judicial. *L.P.C. & D., Inc. v. A.C.,* supra, pág. 879. Cuando se incumple con estos requisitos, la notificación no es válida.

En varias ocasiones, el Tribunal Supremo ha sentenciado que "una notificación defectuosa de una determinación tomada por las agencias administrativas priva de jurisdicción al foro revisor para entender el asunto en disputa, lo que impide que comience a

transcurrir el término para recurrir de cualquier determinación administrativa y, consecuentemente, violenta el derecho al debido proceso de ley de la parte afectada." *St. James Sec. v. AEE,* supra; *PVH Motor v. ASG,* supra, pág. 132; *PR Eco Park et al. v. Mun. de Yauco,* supra, pág. 538; *Toro Alvarado v. Madera Atiles,* 202 DPR 495, 502 (2019); *IM Winner, Inc. v. Mun. de Guayanilla,* supra.

**III**

En su recurso de revisión, la parte recurrente señala tres errores cometidos por el NEPR. En primer lugar, concluyó erróneamente que los cargos identificados en la factura del 8 de junio de 2023 como "Corrección de Factura" no eran revisables mediante objeción, al considerar que estaban relacionados con la factura previa del 30 de marzo de 2023, ya objetada. En segundo lugar, no determinó que LUMA perdió jurisdicción sobre la Segunda Objeción, al incumplir con los términos establecidos en la Ley Núm. 57-2014, *supra,* y el Reglamento Núm. 8863, *supra,* para la investigación y resolución del caso. Por último, ordenó el cierre y archivo de la querella NEPR-QR-2013-0154 sin sustentar esta decisión en base legal alguna.

Debido a que todos los señalamientos de errores están relacionados entre sí, procederemos a abordarlos de manera conjunta.

Según expusimos, la Ley Núm. 36-2024 enmendó el inciso (o) de la Sección 6 de la Ley Núm. 83 de 2 de mayo de 1941, según enmendada, como *"Ley de la Autoridad de Energía Eléctrica de Puerto Rico",* 22 LPRA sec. 196, para fortalecer la protección de los abonados de la Autoridad de Energía Eléctrica de Puerto Rico frente a ajustes retroactivos injustos u onerosos. Según su exposición de motivos, la enmienda tiene como objetivo evitar que cualquier cliente—sea residencial, comercial, industrial o institucional—sea sujeto a cobros retroactivos derivados de errores administrativos o

de cálculo, especialmente cuando estos se notifican fuera del término de 120 días establecido. Este propósito se fundamenta en la necesidad de promover la eficiencia administrativa de la Autoridad y de garantizar justicia para los consumidores.

Aunque la Ley Núm. 272-2002, mediante la cual se enmendó el inciso (1) de la Sección 6 (a) de la Ley Núm. 83 de 2 de mayo de 1941, *supra*, ya limitaba el término de notificación a 120 días, esta aplicaba únicamente a clientes residenciales. La Ley Núm. 36-2024, *supra*, corrigió esta omisión al extender la protección a todos los tipos de abonados. Por lo tanto, cualquier ajuste notificado fuera de ese término es contrario a derecho y, en este caso, debe declararse nulo.

Es importante destacar que, al tratarse de una enmienda procesal, la Ley Núm. 36-2024, *supra*, tiene aplicación inmediata, incluyendo procedimientos en curso al momento de su aprobación, siempre que no afecte derechos sustantivos adquiridos. Véase, *Ortiz Ortiz v. Medtronic, supra*, pág. 778. La Ley Núm. 36-2024, *supra*, no crea nuevas obligaciones ni modifica derechos sustantivos, sino que refuerza la protección procesal de los abonados. Por ende, aplica plenamente a la notificación realizada por LUMA en el presente caso.

Según reseñamos, el 30 de mayo de 2023, LUMA notificó un ajuste en las facturas de servicio eléctrico para los periodos comprendidos entre el 14 de octubre de 2019 al 4 de marzo de 2023, debido a que habían sido emitidas a base de estimados y, posteriormente, fueron refacturadas. No obstante, según lo establecido en la Sección 6 (o) de la Núm. 83 de 2 de mayo de 1941, *supra*, cualquier ajuste en facturas debe ser notificado dentro de un término de 120 días de haberse emitido la factura. En este caso, los ajustes notificados por LUMA excedieron dicho término, salvo en lo referente al periodo del 7 de mayo de 2023 al 8 de junio de 2023, que sí cae dentro del término legal permitido.

Por lo tanto, evaluado el presente recurso a la luz del derecho expuesto, concluimos que la notificación del ajuste por parte de LUMA fuera del término de 120 días es contraria a derecho bajo las disposiciones de la Núm. 83 de 2 de mayo de 1941, *supra.* Este ajuste no puede ser exigido al abonado, pues vulnera tanto el espíritu como la letra de la ley. Se ordena, por tanto, que el ajuste sea declarado nulo, protegiendo así los derechos del cliente conforme a la normativa vigente.

Finalmente, la parte recurrente objetó oportunamente la factura expedida el 8 de junio de 2023 mediante la Segunda Objeción y, conforme al Artículo 6.27 de la Ley Núm. 57-2014, *supra,* LUMA tenía la obligación de investigar y resolver dicha objeción dentro del término de treinta (30). Este término comienza a contar a partir de la fecha en que el cliente notifica su objeción. Al LUMA no haber cumplido con esta obligación, procede que la objeción sea resuelta a favor de la parte recurrente, en lo relativo al periodo del 7 de mayo de 2023 al 8 de junio de 2023, conforme dispone el propio Artículo 6.27 de la Ley Núm. 57-2014, *supra.*

**IV**

Por los fundamentos expuestos, resolvemos revocar la *Resolución Final y Orden* recurrida.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones